## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

-------------------------------------------------------X

SOCLEAN, INC.

      Plaintiff,

- against -

SUNSET HEALTHCARE SOLUTIONS, INC.

      Defendant.

-------------------------------------------------------X

Case No. _____

**COMPLAINT AND
REQUEST FOR A
TEMPORARY RESTRAINING
ORDER AND/OR A
PRELIMINARY INJUNCTION**

Plaintiff SoClean, Inc., ("SoClean" or "Plaintiff"), by its attorneys, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., as and for its Complaint against Defendant Sunset Healthcare Solutions, Inc. ("Sunset"), alleges and states as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, as well as for multiple breaches of contract, misappropriation of trade secrets, tortious interference with business relations, unjust enrichment, and breach of the covenant of good faith and fair dealing.

2.      This case arises out of the actions of Sunset.  Sunset sells a number of continuous positive airway pressure ("CPAP") products, including their newly released product called the Zoey, an automated CPAP disinfecting device, which is based directly on the design of SoClean's product.  The Zoey is an obvious knock-off of SoClean's product as it shares not only the copied patented features, but also the same look and feel, which Sunset has copied to take advantage of SoClean's recognized market popularity.  An images of the Zoey, and an image of SoClean's competing product, the SoClean 2, are below:

Image of the Zoey:



Image of the SoClean 2:



3.     While serving as a distributor for SoClean, Sunset used its position as a distributor for SoClean to obtain confidential information regarding SoClean's products, pricing models, and marketing and product development strategies to develop its own copycat product and business.  As of approximately February 1, 2020, Sunset is now a direct competitor of SoClean with respect to SoClean's sole product, the SoClean 2, an automated CPAP disinfecting system. Sunset has also significantly undercut SoClean's prices, which it can do because it did not have to incur the expense on engineering and development of the product, nor on advertising to create

2

the market.  Sunset's actions—including infringing on SoClean's patents as discussed below—
are irreparably and permanently damaging SoClean through lost sales, lost future sales, price
erosion, loss of goodwill, and other damage.  Importantly, Sunset now intends to aggressively
promote its new product at a major marketing convention and trade show in Las Vegas for these
products that is scheduled to begin on March 3, 2020.  Sunset will also likely inform DMEs (who
are important customers for SoClean and resell medical equipment such as the SoClean 2) at the
convention that it has "worked around" SoClean's patents.  This is false.  However, such a claim,
as Sunset has been making over the past month, is damaging to SoClean and may prompt other
Durable Medical Equipment companies ("DMEs") to sell Sunset's product, if Sunset is not
enjoined.  For all of these reasons, SoClean will be significantly and irreparably harmed if Sunset
is able to continue to market and sell its product, including at the upcoming large national DME
convention and trade show opening on March 3, 2020.

4.      Sunset's misdeeds are further evidenced by its breach of the Distributor
Agreement ("the Agreement") with SoClean.  In particular, Sunset sold SoClean products to
unauthorized resellers who would then compete with SoClean at prices below the contract price
and through sales channels on the Internet, resulting in an estimated $4.5 million of lost sales to
SoClean.  These actions were prohibited by the Agreement.  SoClean addressed these improper
sales with Sunset on numerous occasions throughout 2019.  Sunset also owes SoClean
approximately $200,000 for product supplied to Sunset under the Agreement.

5.      In sum, while acting as SoClean's distributor, Sunset was surreptitiously
developing its own competing product and business that infringes SoClean's patents, used
SoClean's confidential business information to develop its product and business, and intended to
sell its own product to SoClean's potential and actual customers through the same channels that

3

Sunset was selling SoClean's product.  In addition, Sunset has failed to pay SoClean the money it received from sales of the SoClean product.

## THE PARTIES

6.      Plaintiff SoClean, Inc. ("SoClean") is a Delaware corporation with its principal place of business at 12 Vose Farm Road, Peterborough, New Hampshire 03458.

7.      SoClean designs, markets, and sells the SoClean 2, an automated CPAP disinfecting device, and related core components.

8.      Defendant Sunset Healthcare Solutions, Inc. ("Sunset"), is a corporation organized and existing under the laws of the Delaware, and upon information and belief, its principal place of business is located at 180 N Michigan Avenue, Suite 2000, Chicago, Illinois 60601.

## JURISDICTION AND VENUE

9.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. sections 1 et seq.  Subject matter jurisdiction is therefore proper under 28 U.S.C. sections 1331 and 1338(a). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11.     Venue is properly in this District pursuant to ¶ 39 of the Distributor Agreement signed by both Parties, which states that "the Parties consent to the venue and jurisdiction of the state or federal courts located in Suffolk County, Massachusetts and Cook County, Illinois." *See* attached Exhibit A ("Ex. A"), the Distributor Agreement between Sunset and SoClean.

12.     Sunset is subject to personal jurisdiction in this judicial district for the same reasons that venue is appropriate here.

## FACTUAL BACKGROUND

### Background on Sleep Apnea

13.     Sleep apnea is a common sleep disorder characterized by abnormal breathing during sleep.  Pauses in breathing for people with sleep apnea can last from a few seconds to minutes during sleep, often resulting in significant levels of sleep disturbance, which may result in daytime fatigue, vision problems, and impaired daytime cognition.

14.     Sleep apnea is often treated with a continuous positive airway pressure ("CPAP") device.  CPAP devices prevent reduction of oxygen levels in the blood and sleep loss by delivering a stream of pressured air through a hose to a nasal pillow or full facemask surrounding a patient's nose.

### Background on CPAP Machines

15.     An estimated 8 million people in the United States use a CPAP machine to treat respiratory illnesses, most commonly sleep apnea.

16.     CPAP devices operate by pressurizing room air and then pumping it through a hose and into a facemask worn by the user.  The CPAP device delivers air pressurized sufficiently to keep the user's air passages open during sleep.  CPAP devices may also come with a humidifier (or reservoir) which can be used to add moisture to the air as the air is pressurized and delivered to the user.

17.     It is well understood that cleaning and disinfecting a CPAP device is important to the user.  Germs and bacteria can breed in areas of the CPAP device and then be passed to the user.

5

18.     Most manufacturers of CPAP devices recommend that users perform daily and weekly maintenance on their machines and masks to prevent bacteria and mold buildup.  Each part of the CPAP device needs to be cleaned individually, including the mask, the hoses, and the reservoir, which is difficult, messy and time consuming for users on a daily or weekly basis.

19.     Until recently, most CPAP users would hand wash their CPAP devices with water and chemicals.  Hand washing CPAP devices is the approach that SoClean sought to supplement with its patented automated devices starting in 2012.

### The SoClean 2 Device

20.     SoClean is the leader in the design, development, and sales of automated CPAP disinfecting devices with its sole current product being the SoClean 2 automated CPAP disinfecting device (not including related components).

21.     SoClean developed the first automated disinfecting system for CPAP machines.

22.     Prior to SoClean, the market for automated CPAP disinfecting devices did not exist. SoClean effectively created the disinfecting market for automated devices through its extensive advertisements about the importance of cleaning CPAP devices and the opportunity to do so with an automated disinfecting device to supplement handwashing the devices.

23.     SoClean's device disinfects CPAP equipment by circulating ozone (commonly known as "activated oxygen") through the CPAP device to kill germs and bacteria.  By virtue of its superior and patented design and advertising, SoClean is the market leader in sales of automated devices to clean and disinfect CPAP devices.

24.     SoClean's device operates as follows: the mask and hose from the CPAP device are placed into the SoClean device and the lid is closed. The activated oxygen or ozone is generated in the back of the SoClean device and circulates from the SoClean device through a

tube into and through the CPAP reservoir, the CPAP hose and the mask encased in the SoClean device, thereby disinfecting the reservoir, mask, and hose.  The disinfecting process takes place over a short period of time.  The activated oxygen reverts back to oxygen after the process is complete.

26.     SoClean created the market for automated CPAP cleaning devices in 2012 and has built that market through the development of its effective and popular products and as a result of its millions of dollars in investment in advertising about the need to disinfect CPAP devices.  SoClean is currently the market leader in sales of automated CPAP disinfecting devices.

26.     In 2012, virtually all CPAP users were only hand washing their devices.  Today, due to SoClean's efforts and advertising, millions of CPAP users utilize automated disinfecting devices to supplement their cleaning and, as a result, compliance with cleaning and disinfecting has significantly improved.

## SoClean Patents Its Technology

27.     SoClean's patent applications on its technology were originally filed in 2011, with patents granted since 2015.

28.     In particular, on October 8, 2019, United States Patent Number 10,434,205 ("the '205 Patent") entitled "Systems, Methods, and Devices for Ozone Sanitization of Continuous Positive Airway Pressure Devices," issued.

29.     The '205 Patent is a continuation of U.S. patent application Ser. No. 15/441,929, filed February 24, 2017, which is a continuation of U.S. application Ser. No. 15/142,111, filed April 29, 2016 (now U.S. Pat. No. 9,610,373), which is a continuation of U.S. application Ser. No. 14/232,773 filed January 14, 2014) (now U.S. Pat. No. 9,358,316), which is a 371 of

international application no. PCT/US12/46593, filed July 13, 2012, which claims priority to U.S.

provisional application No. 61/508,341, filed July 15, 2011.

30.     On October 29, 2019, United States Patent Number 10,456,492 ("the '492

Patent") entitled "Systems, Methods, and Devices for Ozone Sanitization of Continuous Positive

Airway Pressure Devices," issued.

31.     The '492 Patent is a continuation of No. 15/441,929, filed February 24, 2017,

which was a continuation of application No. 15/142,111, filed April 29, 2016 (now Pat. No.

9,610,373), which is a continuation of application No. 14/232,773, filed as application No.

PCT/US2012/046593, on July 13, 2012, now Pat. No. 9,358,316.

### Sunset Agrees to Act as a Distributor for SoClean

32.     On April 20, 2019, Sunset and SoClean entered into the Agreement, by which

Sunset agreed to act as a distributor for SoClean to advertise, market, and sell SoClean's

products to subdistributors, resellers, and end-users in the United States.  Sunset further agreed in

the Agreement that it would be responsible to ensure that all subdistributors and resellers

complied with the terms of the Agreement.  *See* Ex. A, ¶ 1.

33.     The Agreement also required that Sunset make all required payments within 30

days from the date of SoClean's invoice.  *See* Ex. A, ¶ 13.

34.     The Agreement required that the advertised prices used by Sunset and any of its

subdistributors and/or resellers be at or above SoClean's minimum advertised price ("MAP") for

its products.  This clause applied to all advertising placements.  *See* Ex. A, ¶ 18.

35.     The Agreement further prohibited Sunset and any of its subdistributors and/or

resellers from marketing, promoting, listing, or selling SoClean's products on or through public

online marketplaces, such as Amazon.com.  *See* Ex. A, ¶ 19.

36.     By executing the Agreement, Sunset further acknowledged and agreed, among other things, that SoClean owned and retained (a) all rights, title, and interest in and to all intellectual property rights embodied in its products, including the manufacture and/or production of its products, and (b) all copyrights, patent rights, trade secret rights, and other proprietary rights in or relating to SoClean's products.  *See* Ex. A, ¶ 26.

37.     At the time the Agreement was executed, Sunset did not produce, manufacture, or sell its own automated CPAP disinfecting device.

38.     In other words, at the time the Agreement was executed, Sunset and SoClean were not direct competitors.

39.     As a distributor for SoClean, Sunset was fully aware that SoClean's device is patented.

40.     Sunset also expressly agreed that the Agreement did not grant to Sunset any intellectual property rights in SoClean's products.  *See* Ex. A, ¶ 26.

41.     Sunset also agreed to protect SoClean's Confidential Information from unauthorized use or dissemination and, more importantly, to only use SoClean's Confidential Information ("CI") in connection with the performance of the Agreement.  *See* Ex. A, ¶ 27.

42.     Confidential Information is defined in the Agreement to include "all business-related information, written or oral, disclosed or made available to either party, directly or indirectly, though any means of communication."  The customer, market, and pricing information held by Sunset is plainly such CI, as is other information that Sunset was privy to in its role as distributor.  *See* Ex. A, ¶ 27.

### Sunset Breaches Multiple Provisions of the Distribution Agreement and Infringes SoClean's Patents

43.     Soon after executing the Agreement, Sunset began breaching the Agreement.

9

44.     SoClean met with Sunset about Sunset's qualification process when selling SoClean's products to new customers to ensure that product was only sold to and through reputable companies.  Sunset committed to being thorough in its customer qualification process, and to ensure it only sold SoClean products to brick-and-mortar sub-distributors and resellers, and not to "e-tailers" because this was a channel SoClean already sold through directly.  Sunset, however, failed to do so.

45.     Sunset was authorized by the Agreement to buy product from SoClean and then resell the product to various subdistributors or resellers.  However, some of these subdistributors and resellers then advertised the product below SoClean's announced MAP and/or through online marketplaces, such as on Amazon.com, where they would then directly compete with SoClean at below market pricing.  This was all expressly prohibited by the Agreement.

46.     Sunset also sold SoClean products to a company known as MedLabs.  MedLabs was on SoClean's list of *unauthorized* resellers of SoClean products.

47.     Sunset was aware that MedLabs was an unauthorized reseller, but nevertheless sold SoClean products to and through MedLabs.

48.     For example, Sunset repeatedly sold product to "MedLabs"—an unauthorized reseller—which then advertised and sold the SoClean products at prices significantly below SoClean's MAP and online.

49.     MedLabs still advertises and sells SoClean products—which MedLabs has purchased from Sunset—at prices lower than SoClean's minimum advertised prices on Amazon.com in violation of the Agreement.

50.     SoClean has tracked the sales made by MedLabs to product originally sold by SoClean to Sunset.

51.     In November 2019, Sunset falsely informed SoClean that it had not sold any product to MedLabs or any other flagged company since the earlier "do not sell" directions from SoClean.

52.     Sunset's November 2019 statement to SoClean was false.

53.     Sunset had in fact sold product to MedLabs after previously being instructed not to do so.

54.     Sunset has directly and repeatedly damaged SoClean via actions that were prohibited in the Agreement.

55.     In addition, the Agreement prohibited both Sunset and any subdistributor or reseller associated with Sunset, to market, promote, list, or sell SoClean's products on or through public online marketplaces, such as Amazon, eBay, and Walmart.

56.     Sunset breached its Agreement with SoClean by repeatedly violating this provision.  For example, Sunset repeatedly sold product to MedLabs, which then resold the SoClean products on Amazon.com.

57.     Sales on Amazon.com by MedLabs directly damaged SoClean and were prohibited by the Agreement.

58.     On information and belief, MedLabs advertised and sold approximately 1200 SoClean units per month online and at prices below SoClean's MAP.  This is equivalent to over $2 million in lost sales for SoClean over a six-month period.

59.     On December 10, 2019, pursuant to the Agreement, SoClean provided 90-day notice to Sunset that it was terminating the Agreement with Sunset.

60.    Sunset owes approximately $200,000 to SoClean for product sold to Sunset prior to the Agreement being terminated. This amount is now overdue and Sunset is in breach of the Agreement for nonpayment.

61.    Sunset has also breached the Agreement and infringed SoClean's patents by copying SoClean's patented systems in developing Sunset's competing product, the Zoey, which is an obvious knock-off of SoClean's product, and, on information and belief, by using SoClean's Confidential Information in developing its marketing and sales strategies for the Zoey, including and in particular, using the information it was privy to as a distributor for SoClean of the confidential prices that SoClean charges various DMEs for SoClean's products.  Sunset's actions are in breach of the Agreement and are permanently and irreparably damaging SoClean, by among other things, lost sales, lost customer relationships, and price erosion.  Sunset has priced the Zoey lower than SoClean's product which inevitably will cause lost sales, price erosion, and lost future sales, as well as lost sales of replacement parts.

62.    At the time of the Agreement, Sunset was not a competitor with SoClean and did not manufacture or produce an automated CPAP disinfecting device.

63.    Since it entered into the Agreement, Sunset has released the Zoey to directly compete with SoClean's products and is selling it through the same channels that Sunset sold the SoClean product.

64.    In the Agreement, Sunset agreed that SoClean retained all rights, title, and interest in and to all intellectual property rights embodied in the SoClean products, including the manufacture and/or production of the products, and all patent rights, trade secret rights, and other proprietary right in or relating to the Products.  Sunset further acknowledged and agreed that the Agreement did not grant to Sunset any intellectual property rights in the SoClean products.

65.     Sunset damaged SoClean by violating this provision of the Agreement as well as by infringing SoClean's patent for its products when Sunset—all while acting as a distributor for SoClean—copied SoClean's patented designs in developing Sunset's automated CPAP disinfecting machine, the Zoey, which Sunset has recently commenced marketing.

66.     In other words, while acting as a good-faith business partner with SoClean, Sunset developed its own competing products using SoClean's patented technology and with full knowledge of SoClean's marketing strategy and pricing models.  In addition, upon information and belief, Sunset has been informing DMEs that it "worked around" SoClean's patents.  This is plainly false and has caused further damage to SoClean.  Sunset is also informing DMEs that the Zoey is the "most comparable" product to the SoClean 2 on the market, but at a significantly lower price.

67.     The Agreement required that Sunset "only use [SoClean's] Confidential Information in connection with the performance of" the Agreement.

68.     Sunset breached its Agreement with SoClean by violating these contract provisions and by using SoClean's confidential information and trade secrets regarding SoClean's pricing structure for various DMEs, business model, and business strategies regarding product sales and development and other information in order to develop its own products and business to compete directly with SoClean and interfere with SoClean's contractual and business relationships with its Durable Medical Equipment ("DME") resellers and with SoClean's direct sales to end users.  Sunset's willful actions are irreparably and permanently harming SoClean.

69.     Sunset partnered with SoClean to act as a distributor of SoClean products, as part of the Agreement made a number of representations to and covenants with SoClean, but has repeatedly failed to abide by the Agreement, owes approximately $200,000 to SoClean under the

Agreement, and, even more problematic, has infringed SoClean's patented design of its products and is now using SoClean's confidential information and trade secrets in launching and selling the Zoey to compete directly with SoClean.

70.     SoClean recently learned that Sunset intends to market the Zoey on-hand at the Medtrade Spring Convention in Las Vegas on March 3rd through March 5th. The MedTrade Spring Convention is the second largest trade show in the United States focused exclusively on the home medical equipment market. In fact, both SoClean and Sunset are scheduled to have booths at the Convention. Sunset's effort to market the Zoey at a large industry convention and trade show will cause significant and immediate irreparable harm to SoClean through lost sales, lost market share, loss of goodwill, price erosion, market confusion, and lost future sales, among other damages.

71.     Upon information and belief, Sunset used and is now using SoClean's Confidential Information—which Sunset obtained from SoClean pursuant to the Agreement and agreed to only use in performance of the Agreement—to compete directly with SoClean.

72.     Sunset is also selling its directly competing product through the same DME channels it sold SoClean's product.  In other words, throughout the time that Sunset was marketing SoClean's product, Sunset was designing a directly competing knock-off product which it would sell at a lower price through the same channels with knowledge of the confidential prices SoClean uses in the same channels. Sunset's conduct with respect to DMEs is significantly and irreparably harming SoClean through lost sales, lost future sales, loss of goodwill, price erosion, and other damages.   In addition to lost revenues from the sale of its core product, SoClean will also lose follow-on sales of its filter cartridges which are frequently

replaced by users, as well as follow-on sales of its core product to satisfied customers, and as a result of expected price erosion.

## FIRST CLAIM FOR RELIEF

### INFRINGEMENT OF U.S. PATENT NO. 10,434,205

73.     SoClean realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

74.     On October 8, 2019, United States Patent Number 10,434,205 ("the '205 Patent") entitled "Systems, Methods, and Devices for Ozone Sanitization of Continuous Positive Airway Pressure Devices," was duly and legally issued.

75.     A true and correct copy of the '205 Patent is attached as Exhibit B and incorporated herein by reference.

76.     Sunset is liable for patent infringement pursuant to 35 U.S.C. § 271, because Sunset has directly and willfully infringed and continues to infringe claims of the '205 Patent by (at least) using, selling, offering for sale, and importing Sunset's "the Zoey" CPAP disinfecting device (the "Accused Product").

77.     Sunset sells and offers for sale the Accused Product in the United States at least via Sunset's website: https://cleanwithzoey.com/ and through various DMEs.

78.     Attached hereto as Exhibit C is a printout of the landing page for https://cleanwithzoey.com, through which Sunset offers the Accused Products for sale in the United States.

79.     The Accused Product infringes Claims 1, 2, 6, 7, and 11 of the '205 Patent.

80.     A Claim Chart which explains in detail the manner in which Sunset is infringing the claims of the '205 Patent is attached as Exhibit D.

81.     Defendant's infringement of the '205 Patent has caused and continues to cause immediate and irreparable damage to SoClean in an amount to be determined at trial.  SoClean is entitled to its damages, including without limitation, lost business opportunities, reasonable royalties, lost profits, future lost profits, price erosion, and/or damage to goodwill.

82.     Defendant's infringement of the '205 Patent has caused and will continue to cause immediate and irreparable harm to SoClean for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

83.     Upon information and belief, Sunset knew of the '205 Patent, and, as a result, its infringement of the '205 Patent was willful and deliberate.

84.     Alternatively, Sunset's infringement of the '205 Patent was objectively reckless due to the fact that its actions constituted infringement of a valid patent, and Sunset knew or should have known of this objectively-defined risk because the risk was so obvious as SoClean's intellectual property is publicly searchable, and further in light of Sunset's knowledge of SoClean's intellectual property.

85.     SoClean is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and costs, including attorneys' fees, incurred prosecuting this action.

## SECOND CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 10,456,492

86.     SoClean realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

87.     On October 29, 2019, United States Patent Number 10,456,492 ("the '492 Patent") entitled "Systems, Methods, and Devices for Ozone Sanitization of Continuous Positive Airway Pressure Devices," was duly and legally issued.

16

88.     A true and correct copy of the '492 Patent is attached as Exhibit E and incorporated herein by reference.

89.     SoClean is the owner to all the rights and interests in the '492 Patent.

90.     Sunset is liable for patent infringement pursuant to 35 U.S.C. § 271, because Sunset has directly and willfully infringed and continues to infringe claims of the '492 Patent by (at least) using, selling, offering for sale, and importing the Accused Product.

91.     Sunset sells and offers for sale the Accused Product in the United States at least via Sunset's website: https://cleanwithzoey.com/ and through various DMEs.

92.     Attached hereto as Exhibit C is a printout of the landing page for https://cleanwithzoey.com/, through which Sunset offers the Accused Product for sale in the United States.

93.     The Accused Product infringes Claims 1, 3, 9, 13, 14, 17, and 20 of the '492 Patent.

94.     A Claim Chart which explains in detail the manner in which Sunset is infringing the claims of the '492 Patent is attached as Exhibit F.

95.     Defendant's infringement of the '492 Patent has caused and continues to cause damage to SoClean in an amount to be determined at trial.  SoClean is entitled to its damages, including without limitation, lost business opportunities, reasonable royalties, lost profits, future lost profits, price erosion, and/or damage to goodwill.

96.     Defendant's infringement of the '492 Patent has caused and will continue to cause immediate and irreparable harm to SoClean, for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

97.     Upon information and belief, Sunset was well aware of the '492 Patent, based on its role as a distributor of SoClean's products and its admissions that it sought to design around SoClean's patents. As a result, its infringement of the '492 Patent was willful and intentional.

98.     Alternatively, Sunset's infringement of the '492 Patent was objectively reckless due to the fact that its actions constitute infringement of a valid patent, and Sunset knew or should have known of this objectively-defined risk because the risk was so obvious as SoClean's intellectual property is publicly searchable, and further in light of Sunset's knowledge of SoClean's intellectual property.

99.     SoClean is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and costs, including punitive damages and attorneys' fees, incurred in prosecuting this action.

## THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT

100.     SoClean realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

101.     The Agreement, executed on April 20, 2019 between SoClean and Sunset, formed a binding and enforceable Agreement.

102.     SoClean duly performed all the conditions on its part pursuant to the Agreement.

103.     Sunset breached the Agreement.

104.     Sunset has at least (a) failed to make payments due to SoClean, (b) failed to abide by the terms regarding Minimum Advertised Price ("MAP"), and (c) failed to abide by the terms regarding online sales through online marketplaces like Amazon.com.

105.    In addition, Sunset has breached the Agreement by using SoClean's Confidential Information in developing, designing, and launching for sale Sunset's competing product, the Zoey.

106.    Further, Sunset breached the Agreement by agreeing that SoClean retained all rights, title, and interest in and to all intellectual property rights embodied in the SoClean products, including the manufacture and/or production of the products, and all patent rights, trade secret rights, and other proprietary right in or relating to the Products, along with agreeing that the Agreement did not grant to Sunset any intellectual property rights in the SoClean products, yet Sunset has infringed those rights of SoClean.

107.    As a direct and proximate result of Sunset's breaches, SoClean has suffered and will continue to suffer damages.

## FOURTH CLAIM FOR RELIEF

### MISAPPROPRIATION OF TRADE SECRETS

108.    SoClean realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

109.    SoClean owns certain confidential, proprietary, and trade secret information, as described above. This includes information regarding SoClean's product development strategy, pricing structure, business model, general business strategy, and customer data. For example, SoClean owns trade secret information regarding product development strategies, relating to upcoming products' physical and technical specifications, development schedules and launch dates, medical classifications, and pricing to various distributors and DMEs.

110.    This confidential, proprietary, and trade secret information derives significant economic value from not being generally known to, or readily attainable through legal means by, SoClean's existing and potential competitors.

111.    SoClean has taken reasonable measures to keep this information secret and confidential, and has at all times maintained strict security measures to protect the secrecy of this confidential and proprietary information. For example, before divulging this information, SoClean requires its manufacturers, wholesalers, and distributors to sign agreements with non-disclosure requirements.

112.    SoClean required that Sunset agree to a non-disclosure and confidentiality provision as part of the 2019 Distributor Agreement. With these protections in place, SoClean divulged trade secret information—including information regarding SoClean's product development strategy, pricing structure, business model, general business strategy, and customer data—to Sunset, for Sunset to use in connection with the Agreement. Any use of this trade secret information was limited to those uses that were in connection to the Agreement.

113.    In violation of SoClean's rights, Sunset has misappropriated SoClean's confidential, proprietary, and trade secret information in an improper and unlawful manner. This misappropriation was intentional, knowing, malicious, and fraudulent. Such acts of misappropriation include:

    a.    Sunset's use of SoClean's pricing and business strategy secrets in developing their competing business model, and in marketing and selling their competing product;

    b.    Sunset's use of SoClean's product development strategy secrets—such as information relating to upcoming products' physical and technical specifications, development schedule and launch date, medical classification, and pricing to

various distributors and DMEs—in designing their competing product, and selling

that product to SoClean's distributors and customers;

c.   Sunset's use of SoClean's customer data and distribution-channel information to

market and sell their competing product.

114.   As a direct and proximate result of Sunset's misappropriation, SoClean has

suffered, and will continue to suffer, severe competitive harm, irreparable injury, and significant

damages, including lost sales, market share, and brand awareness.

### FIFTH CLAIM FOR RELIEF

## TORTIOUS INTERFERENCE WITH
## BUSINESS RELATIONS

115.   SoClean realleges and incorporates by reference the allegations of the paragraphs

of this Complaint as though fully set forth herein.

116.   In addition to direct-to-consumer sales, SoClean also distributes their products

through partnerships with DME suppliers. To that end, SoClean and various DME suppliers have

entered into contracts and business relationships to facilitate the sale of SoClean's products.

117.   Through its position as a distributor of SoClean's products, Sunset had knowledge

of these contracts and business relationships' existence, and of their material terms.

118.   Sunset has intentionally interfered with these contracts and business relationships,

by improperly inducing DME suppliers to purchase Sunset's cheaper knock-off products rather

than SoClean devices under the guise that Sunset had worked around SoClean's patents in

developing the Zoey and developed the most comparable product to the SoClean 2 on the market

at a cheaper price.

119.   SoClean has sustained damages as a result of Sunset's unlawful interference.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

120.     SoClean realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

121.     As part of the Agreement between SoClean and Sunset, SoClean supplied Sunset with confidential, proprietary, and trade secret information. This information was provided specifically—and exclusively—for use in relation with the Agreement.

122.     Sunset has used and benefitted from this information, through using SoClean's confidential information and trade secrets to develop a product to compete with SoClean's product, and using that information to effectively market and distribute the competing product. Any such use and benefit was outside of the terms of, and expressly prohibited by, the Agreement under which the information was provided.

123.     Sunset had full knowledge and appreciation as to the benefits that they would achieve through misusing SoClean's confidential, proprietary, and trade secret information.

124.     Allowing Sunset to retain the benefits accrued through their improper use of SoClean's information would be inequitable absent payment for its value to SoClean. While Sunset's use of this information has, thus far, been essentially costless for Sunset, SoClean has invested significant time and capital in developing this proprietary information.

125.     The value of this information to SoClean comes, in large part, from its proprietary nature. Therefore, the mere fact that SoClean is no longer the sole user of this information not only means that their investment in acquiring and developing that information will accrue to Sunset, but also that SoClean's own value in having this information has diminished.

## SEVENTH CLAIM FOR RELIEF

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING

126.   SoClean realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

127.   On April 20, 2019, SoClean and Sunset entered into the Agreement. The Agreement outlined each parties' rights and obligations with respect to the distribution of SoClean's products, and the protections afforded to SoClean's confidential, proprietary, and trade secret information.

128.   By misappropriating the confidential, proprietary, and trade secret information that SoClean provided pursuant to the Agreement, Sunset has damaged SoClean.  Sunset's actions have prevented SoClean from receiving the benefit of the non-disclosure protections provided in the Agreement.

129.   Sunset's actions have also prevented SoClean from receiving the benefit of the Agreement in its entirety: While the agreement was formed for the purpose of partnering with Sunset to distribute SoClean's products, Sunset has instead leveraged the information received under the Agreement to distribute their own, competing product.

130.   Sunset has also unlawfully leveraged the information provided under, and their status as distributor provided by, the Agreement, by allowing Sunset to help resellers undercut SoClean's prices and destroy SoClean's exclusive distribution model, in an attempt to damage SoClean's brand and online sales.  Sunset's actions required SoClean to develop a new distributor model, at significant cost and expense to SoClean, and terminate all distributors and resellers on December 10, 2019.

131.    These actions were taken in bad faith, as part of Sunset's concerted campaign to undercut the Agreement and its distribution partner, SoClean, in order to better position its competing product.

132.    SoClean has sustained damages as a result of Sunset's breach, including lost sales, lost future sales, lost goodwill, and other significant damages.

## PRAYER FOR RELIEF

WHEREFORE, SoClean prays for relief as follows:

1.      Judgment on all Counts of this Complaint;

2.      An award of actual damages along with prejudgment interest according to proof;

3.      An order finding that Sunset's infringement has been willful, and that the circumstances presented justify trebling the damages awarded to SoClean, as provided by 35 U.S.C. § 284;

4.      A temporary restraining order and/or preliminary injunction prohibiting Sunset and its parents, subsidiaries, officers, directors, agents, employees, licensees, and any persons acting in concert with Sunset, along with related individuals and entities, representatives, OEMs, dealers, distributors, and customers, from manufacturing, marketing, or selling the Zoey or any product which infringes SoClean's patents or through the use of SoClean's Confidential information, and from presenting, promoting, marketing, or selling Sunset's CPAP disinfecting device, the Zoey, in any way, manner, or fashion at the upcoming MedTrade Spring convention in Las Vegas on March 3rd through March 5, 2020.

5.      For a permanent injunction enjoining Sunset and its parents, subsidiaries, officers, directors, agents, employees, licensees, and any persons acting in concert with Sunset, along with related individuals and entities, representatives, OEMs, dealers, distributors, and customers, from infringing SoClean's patents;

6.      A declaration that this is an exceptional case and award to Plaintiff its attorneys' fees incurred in prosecuting this action, as provided by 35 U.S.C. § 285, or as otherwise

provided by law, whether by statute, common law or the Court's inherent power;

7.      Compensatory, incidental, and consequential damages against Sunset;

8.      Costs, expenses and fees; and

9.      For all other and further relief deemed just and proper by the Court.

## **DEMAND FOR JURY**

SoClean demands trial by jury on all issues triable as a matter of right at law.

Boston, Massachusetts

February 20, 2020

MINTZ, LEVIN, COHN, FERRIS,

GLOVSKY AND POPEO, P.C.

/s/ *H. Joseph Hameline*

H. Joseph Hameline (BBO No. 218710)

Thomas H. Wintner (BBO No. 667329)

Clancy Galgay (BBO No. 673116)

One Financial Center

Boston, MA 02111

Tel:  (617) 348-3000

Fax:  (617) 542-2241

HJHameline@mintz.com

TWintner@mintz.com

CGalgay@mintz.com

*Attorneys for Plaintiff*

\