**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

-----------------------------------------------------------X

SOCLEAN, INC.

      Plaintiff,

      - against -

                                  Case No. 1:20-cv-10351-IT

SUNSET HEALTHCARE SOLUTIONS, INC.

      Defendant.

-----------------------------------------------------------X

## SUPPLEMENTAL DECLARATION OF DEAN MARCARELLI

I, Dean Marcarelli, state as follows:

1.     I am over the age of 18 and work for Plaintiff SoClean, Inc. ("SoClean") as the Chief Marketing Officer. As part of my role at SoClean, I am responsible for overseeing sales and marketing activities. I have worked at SoClean for over 3 years, including 3 years in my current position. I am familiar with Sunset Healthcare Solutions, Inc. ("Sunset"), SoClean's prior history with Sunset, the CPAP disinfecting device market, and SoClean's position and strategy in the market.

2.     I prepared an earlier declaration that was in support of SoClean's Emergency Motion for an Ex Parte Temporary Restraining Order and/or a Preliminary Injunction ("SoClean's Motion"). This declaration supplements my earlier declaration.

3.     I have reviewed Sunset's Opposition to SoClean's Motion.

**SoClean Sales**

4.     For all intents and purposes, SoClean sells one product, the SoClean 2. SoClean also sells related components and replacement parts for the SoClean 2. SoClean does not have any

other sources of revenue. Therefore, all employees at SoClean are currently dependent on sales of the SoClean 2, and any significant decline in sales revenue could lead to lay-offs.

5.      In 2019, SoClean's annual revenue from sales was approximately $190,000,000. Initial sales of the SoClean 2 also lead to future convoyed sales which are a significant portion of SoClean's business.

6.      In 2019, approximately 50% of the SoClean 2 units sold were sold through the DME channel with the other 50% sold directly to consumers by SoClean.  SoClean sells the SoClean 2 to both distributors and directly to DMEs, as well as direct-to-consumer.  However, all distributors sell the product to DMEs and not direct-to-consumer.  Therefore, in order for a consumer to purchase a SoClean 2, he must purchase the device either through a DME or directly from SoClean.  The 9% figure cited by Sunset in its Opposition was the approximate amount of units sold by SoClean directly to DMEs, and not through distributors who then sell to DMEs. Ultimately, however, approximately 50% of units sold to consumers in 2019 were through DMEs which demonstrates that the DME channel is very important to SoClean.

7.       Sunset's presence in the DME channel, where it is selling a cheaper, infringing product, will undoubtedly have a direct and detrimental effect on all of SoClean's DME-mediated sales. It is a near certainty that a large percentage of consumers will buy the cheaper Zoey which includes the same technology as the higher priced SoClean 2, but at a lower price, and that DMEs will push the Zoey over the SoClean 2 in order to make more profit margins.

8.      If forced to compete with Sunset in the DME channel, even at 9%, SoClean will lose enough sales that it will face immediate pressure to lower its prices across *all* channels (i.e., in order to compete against the lower DME prices set for Sunset's infringing product).

9.      The logic is simple: if SoClean only were to lower its prices in the DME channel to compete with Sunset, but were to keep its prices higher in direct-to-consumer sales, then consumers will vote with their wallets and buy either a lower priced SoClean from DMEs (which means a lower profit margin for SoClean) or the Zoey from DMEs (which means no sale at all for SoClean), and avoid buying the higher priced option direct from SoClean.  In addition, SoClean's profit margins are smaller on sales through DMEs than sales direct-to-consumer by SoClean. Therefore, sales that move from the direct-to-consumer channel to the DME channel will be less profitable for SoClean.

10.      The Zoey is priced $50 lower than the SoClean 2, or approximately 15% lower price.  It is difficult to assess the total damage that SoClean will suffer if forced to drop the price of its lone product (not including accessories) in order to compete with Sunset.  However, the damage would be significant and impact all aspects of the business.  For example, if the price point is lowered, not only will SoClean's margins and profits deteriorate, but also SoClean will not be able to support its current level of advertising, thus losing sales and revenue, and further impacting future products and sales.  In addition, a portion of SoClean employees may need to be laid off if the preliminary injunction is not granted.  SoClean's business and sales are driven by its extensive advertising, which is supported by the current price point.  If SoClean does not advertise, it does not sell product.

**SoClean's Competition in the CPAP Disinfecting Market**

11.      Broadly speaking, it is true that there are other "CPAP cleaning devices" on the market.  However, the SoClean device is the only automated, stand-alone device that connects directly to the CPAP device, and uses ozone to disinfect the mask, hose, and reservoir.  By virtue

of its superior engineering, design, and significant investment in advertising, SoClean is the market leader in sales of automated devices to clean and disinfect CPAP devices.

12.     Until the infringing Zoey entered the market, no other product was able to as easily and effectively clean all parts of a CPAP device as the SoClean 2, as all other "competitors" require multiple steps and/or disassembly of the CPAP device.

13.     SoClean estimates that Sunset has approximately $40-50 million in revenues per year—not including from the Zoey.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on February 27, 2020


DEAN MARCARELLI

## CERTIFICATE OF SERVICE

I certify that on February 27, 2020, I filed a copy of the foregoing document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF registered users.

DATED: February 27, 2020                          Respectfully submitted,

/s/ *H. Joseph Hameline*
H. Joseph Hameline (BBO No. 218710)
Thomas H. Wintner (BBO No. 667329)
Clancy Galgay (BBO No. 673116)
One Financial Center
Boston, MA 02111
Tel:  (617) 348-3000
Fax:  (617) 542-2241
HJHameline@mintz.com
TWintner@mintz.com
CGalgay@mintz.com

*Attorneys for Plaintiff*