UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOCLEAN, INC., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:20-cv-10351-IT |
| | * |
| SUNSET HEALTHCARE SOLUTIONS, INC., | * |
| | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER

February 28, 2020

TALWANI, D.J.

Plaintiff SoClean, Inc. ("SoClean") alleges that Defendant Sunset Healthcare Solutions, Inc. ("Sunset") has infringed SoClean's patent relating to a system for using ozone to sanitize continuous positive airway pressure ("CPAP") devices. SoClean seeks a preliminary injunction enjoining Sunset from marketing or selling the accused infringing device. The court finds that SoClean has a substantial likelihood of prevailing on its claim of infringement but has not demonstrated that it is likely to suffer irreparable harm if a preliminary injunction does not issue. Accordingly, SoClean's Motion for Preliminary Injunction [#3] is DENIED.

I. **Background**

SoClean is a medical device company that designs, develops, and sells automated CPAP disinfecting devices and is the owner of U.S. Patent No. 10,434,205 ("the '205 Patent"), Systems, Methods, and Devices for Ozone Sanitization of Continuous Positive Airway Pressure Devices. Marcarelli Decl. ¶¶ 3, 6 [#7]. SoClean is the market leader in sales of automated CPAP disinfecting devices and has sold more than 650,000 devices worldwide, including more than 600,000 of its SoClean 2 devices in the United States. Id. ¶¶ 5, 7. SoClean sells the SoClean 2

1

with a retail price of $348. Id. ¶ 30. In 2019, SoClean had revenues of approximately $190 million. Marcarelli Decl. ¶ 5 [#28].

Sunset is a manufacturer and distributor of home medical equipment including respiratory products. Slosar Decl. ¶ 2 [#17]. Approximately 50% of Sunset's business arises from the manufacture and sale of its own products and the other half is the distribution of other equipment manufacturers' products, such as the SoClean. Id. ¶ 5. Sunset does not sell directly to consumers, but to retail durable medical equipment companies ("DMEs"), which then sell the products directly to consumers. Id. ¶ 6. Sunset sells to over 1,600 DMEs and had revenues of over $40 million in 2019. Id.

Sunset had acted as a distributor for SoClean's products since 2014. Slosar Decl. ¶ 9 [#17]; Marcarelli Decl. ¶ 13 [#7]. In December 2019, SoClean terminated the distribution agreement. Marcarelli Decl. ¶ 24 [#7]; Slosar Decl. ¶ 17 [#17].

Starting in July 2018, while Sunset was still distributing SoClean's products, Sunset began developing its own CPAP cleaning device called the "Zoey." Slosar Decl. ¶ 19 [#17]. Sunset has manufactured 500 devices as of the end of December 2019 and sold its first device on January 15, 2020. Id. ¶ 20. Since launch, Sunset has sold approximately 420 units. Id. ¶ 26. Sunset has set its end-user price for the Zoey at $299. Id. ¶ 24.

On February 20, 2020, SoClean filed a Complaint [#1] and Emergency Motion for a Temporary Restraining Order and/or a Preliminary Injunction [#3]. SoClean's complaint alleges Sunset has infringed SoClean's Claims 1, 2, 6, 7, and 11 of the '205 patent and also alleges breach of contract, misappropriation of trade secrets, tortious interference with business relations, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 73-132.

In support of its request for preliminary injunctive relief, SoClean puts forth evidence that the Zoey infringes the '205 patent and that Sunset intends to market and present the Zoey at the second-largest home medical equipment tradeshow in the United States, which will start on March 3, 2020. Marcarelli Decl. ¶ 28 [#7]. SoClean requests that the court enjoin Sunset from marketing the Zoey at the upcoming tradeshow and from otherwise manufacturing, marketing, or selling the Zoey or other infringing products. Mot. Prelim. Inj. 2 [#3]. After an accelerated briefing schedule, the court heard oral argument on February 28, 2020.

## II. Discussion

The court is authorized to grant an injunction "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. However, the issuance of a preliminary injunction before a trial on the merits can be held is an "extraordinary remedy" that shall only enter if plaintiff makes a clear showing that it is entitled to such relief. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). A plaintiff must demonstrate that: (1) it has a substantial likelihood of success on the merits; (2) there is a threat of irreparable harm if an injunction is withheld; (3) the balance of hardships between the parties weighs in the plaintiff's favor; and (4) the requested injunction would not conflict with the public interest. Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). In considering likelihood of success on the merits, the court gives "dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG, 881 F.3d 1323, 1328 (Fed. Cir. 2018) (citing Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 894 (Fed. Cir. 1998)). Accordingly, when considering whether Plaintiff has shown a substantial likelihood of success on the merits of its claim that Sunset has infringed the '205 patent, the court applies the Federal

Circuit's standard that a preliminary injunction shall not issue if the accused infringer "raises a substantial question concerning either infringement or validity." LifeScan Scotland, Ltd. v. Shasta Techs., LLC, 734 F.3d 1361, 1366 (Fed. Cir. 2013). Because Defendant does not challenge the validity of '205 at this time, see Def.'s Mem. 9 n.4 [#16], the court only examines the question of infringement for the likelihood of success analysis.

### A. Likelihood of Success on the Merits

In determining whether Sunset infringes SoClean's patents, the court looks to the literal claims of the patent to "define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). Accordingly, the court starts with the language of Claim 1 of the '205 patent:

> 1. A system comprising:
>    an ozone device comprising an ozone operating system and an ozone distribution line;
>    a connector unit configured to fluidly couple the ozone device to a continuous positive airway pressure (CPAP) device, the connector unit comprising:
>      a first end comprising a first opening configured to couple to a reservoir of said CPAP device;
>      a second end comprising a second opening configured to couple to a hose of said CPAP device;
>      a first passageway extending between the first opening and the second opening, the first passageway defined at least in part by a wall of said connector unit, wherein said wall extends between the first end and the second end; and
>      a port comprising a third opening that is configured to couple to the ozone distribution line and a second passageway, wherein the second passageway extends through the wall and is at least partially disposed within the first passageway.

'205 Patent col. 8, 30-52 [#5-1]. "In assessing the scope of [SoClean's] patent protection, the Court must engage in claim construction to determine the 'ordinary and customary meaning' of the relevant claim terms." iRobot Corp. v. SharkNinja Operating LLC, No. 19-CV-12125-ADB, 2019 WL 7578466, at *3 (D. Mass. Nov. 26, 2019) (citing Phillips, 415 F.3d at 1312). Plaintiff's

brief argues that no additional construction is necessary beyond the claim terms' ordinary meaning. Pl.'s Br. 11 [#4]. Sunset argues that three terms—"wall," "through," and "disposed within"—must be construed, and submitted an expert report opining on how "a person of ordinary skill in the art in question at the time of the invention" would define them. Def.'s Mem. 9 [#16] (citing Phillips, 415 F.3d at 1312-13). Although SoClean disputes that these three terms require construction beyond their ordinary meaning, SoClean argues that infringement can be found even with Sunset's construction and thus accepts Sunset's construction for the purpose of this motion. Accordingly, for now, the court construes the three disputed terms to be consistent with Sunset's definitions.[1] Cf. Outside the Box Innovations, LLC v. Travel Caddy, Inc., 695 F.3d 1285, 1302 (Fed. Cir. 2012) ("tentative claim construction for preliminary injunction purposes does not remove the issue from later review after the facts are elaborated").

Further claim construction is necessary, however, because a material dispute remains as to how SoClean and Sunset construe "first passageway" in Claim 1 of the '205 patent. Sunset argues that the claimed "first passageway" is limited to the void in the connector that remains after the area occupied by the "second passageway" (i.e., the ozone distribution line) is excluded. In other words, Sunset argues that the bounds of the "first passageway" are defined by the bounds of the "second passageway" such that to be part of one is to not be part of the other. This is central to Sunset's non-infringement position because, as stated in open court, this is its basis

---

[1] The three terms are as follows:

> **Wall** – "a single structure having a pair of opposed surfaces and a thickness"
> **Through** – "Moving in one side and out the other side of"
> **Disposed Within** – "inside of"

Liebschner Decl. ¶¶ 79-101 [#19].

for arguing that the Zoey's "second passageway" is not "partially disposed within the first passageway."

However, Sunset's proposed construction of "first passageway" is inconsistent with the language of the claim. "[C]laim construction must begin with the words of the claims themselves." Allergan Sales, LLC v. Sandoz, Inc., 935 F.3d 1370, 1373 (Fed. Cir. 2019) (citing Amgen Inc. v. Hoechst Marion Roussel, Inc., 457 F.3d 1293, 1301 (Fed. Cir. 2006)). The claim itself defines the "first passageway" as that portion of the device "extending between the first opening[2] and the second opening,[3] *the first passageway defined at least in part by a wall of said connector unit*, wherein said wall extends between the first end and the second end." '205 Patent col. 8, 43-48 [#5-1] (emphasis added). Sunset points to nothing in the claims, the remainder of the specifications, the prosecution history, and/or extrinsic evidence that would indicate that the first passageway should be defined based upon the void left after the insertion of the second passageway instead of, as the ordinary language of the claim states, based on the wall of the connector unit. Accordingly, for the purpose of the preliminary injunction analysis, the court construes "first passageway" to be the passageway created by the walls of the connector unit.

Once the meaning of the Patent has been determined, the court next examines whether the allegedly infringing device meets all of the structural limitations of the patent. Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1312 (Fed. Cir. 2005). An examination of the Zoey connector shows that it contains a second passageway that extends through the wall of the connector and is "at least partially disposed within the first passageway."

---

[2] The first opening is the part of the connector configured to couple to the reservoir of the CPAP device. '205 Patent col. 8, 38-39 [#5-1].
[3] The second opening is the part of the connector configured to couple to the hose of the CPAP device. '205 Patent col. 8, 40-41 [#5-1].

'205 Patent col. 8, 50-51 [#5-1]. [4] Because this is Sunset's only ground of challenging infringement at this time, see Def.'s Mem. 11-12 [#16], the court finds that SoClean has a substantial likelihood of succeeding on its claim that Sunset has infringed Claim 1 of the '205 patent.[5]

### B. Irreparable Harm

SoClean has demonstrated only a possibility of irreparable harm if a preliminary injunction does not issue. This is not sufficient for the extraordinary relief that Plaintiff requests. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). "A showing of irreparable harm requires an actual, viable, presently existing threat of serious harm that cannot adequately be remedied through money damages alone." Corp. Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 242 (D. Mass. 2013) (internal citation omitted), aff'd, 731 F.3d 6 (1st Cir. 2013). Here, SoClean has not provided a "clear showing" that money damages will not be able to make SoClean whole after a trial on the merits has concluded and, thus, the court cannot issue a preliminary injunction at this time.

SoClean's argument that it will suffer irreparable harm is rooted in three theories. First, SoClean argues that Sunset's lower price point will harm SoClean's sales and market dominance.

---

[4] In its Opposition 12 [#16], Sunset argues that the Zoey's first passageway and second passageway are two separate pieces that never intersect. However, this argument does not address the final form of the connector after the two pieces have been welded together into one. In constructing the terms of the patent and examining infringement, the court limits its analysis to the device in its final form.

[5] Because the court finds a substantial likelihood of infringement as to Claim 1, the court does not need to reach Claims 2, 6, 7, and 11.

However, "[e]vidence of potential lost sales alone does not demonstrate irreparable harm." Metalcraft of Mayville, Inc. v. The Toro Co., 848 F.3d 1358, 1368 (Fed. Cir. 2017).

Second, SoClean argues that Sunset's price point will cause price erosion in the overall market for CPAP machines such as the SoClean 2 and that monetary damages at the conclusion of this litigation will not be able to make SoClean whole. Unlike loss of sales and market share, price erosion is a valid ground for finding irreparable harm. Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012) (citing Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1362 (Fed.Cir.2008) and Sanofi–Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1382–83 (Fed.Cir.2006)). However, SoClean's evidence of price erosion is underdeveloped at this time. SoClean's Chief Marketing Officer, Dean Marcarelli, states that SoClean "will likely need to lower its prices in order to compete with the Zoey" because the SoClean 2 has a retail price of $348 and the Zoey has a retail price of $299. Marcarelli Decl. ¶ 30 [#7]. However, SoClean admits that it previously sold the SoClean 2 at $299 but had to increase the price to $348 due to an increase in marketing costs. Id. ¶ 30. The record does not indicate when SoClean increased the price and what market success the SoClean 2 has had at the higher price point. Thus, it is unclear whether the Zoey's $299 price point will actually cause price erosion in the market. Furthermore, the evidence reflects that the Zoey and the SoClean 2 may be sold in different channels. Compare Marcarelli Decl. ¶ 12 [#7] with Slosar Decl. ¶ 6 [#17]. The market interdependence of the different sales channels is not clear based upon the current record. Accordingly, there is uncertainty as to whether the presence of the Zoey on the market will cause irreparable price erosion for the relevant market and therefore SoClean has not met its burden of a "clear showing" at this time.

The same is true for SoClean's third theory, which is that irreparable harm will follow if SoClean's lost revenues and market share causes it to have to cut its advertising budget, causing downstream and difficult-to-project loss in growth. While the evidence does reflect that SoClean's sales rely on advertising, see Marcarelli Decl. ¶ 8, 33 [#7], the evidence is insufficient to conclude that SoClean will be required to reduce its advertising budget as a result of the presence of the Zoey on the market and that any loss in revenues attributable to reduced advertising would not otherwise be remedied by money damages in time.

### III. Conclusion

Although the court finds that SoClean has demonstrated a substantial likelihood of success on the merits, the court may not issue a preliminary injunction in the absence of a clear showing of irreparable harm. Winter v. Natural Res. Def. Council, Inc., 555 U.S. at 22. Accordingly, the other factors of the analysis need not be reached at this time. Plaintiff's Motion for Preliminary Injunction [#3] is DENIED without prejudice to renew.

IT IS SO ORDERED.

Date: February 28, 2020

Indira Talwani
United States District Judge