UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SOCLEAN, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10351-IT |
| | * | |
| SUNSET HEALTHCARE SOLUTIONS, | * | |
| INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER
August 13, 2021

TALWANI, D.J.

Plaintiff SoClean, Inc. ("SoClean") alleges that Defendant Sunset Healthcare Solutions,
Inc. ("Sunset") has infringed two of SoClean's trade dress registrations by selling knockoff
versions of filters that SoClean sells for its popular device for cleaning continuous positive
airway pressure ("CPAP") machines. SoClean seeks a preliminary injunction enjoining Sunset
from using, selling, offering for sale, or making in the United States Sunset's allegedly infringing
filter or any other filters that would infringe SoClean's trade dress. Pl.'s Mot. 3 [#161]. Sunset
counters that SoClean's marks are invalid since they are functional and not distinctive and that,
in any event, consumers are not likely to be confused by Sunset's use of the marks. As set forth
more fully below, because the United States Patent and Trademark Office ("PTO") has registered
SoClean's marks on the principal register, SoClean is entitled to a presumption that its marks are
non-functional and distinctive, and Sunset has not put forth sufficient evidence to rebut that
presumption. Moreover, the court finds that SoClean has established a reasonable likelihood of
success on the merits of its trade dress infringement claim where Sunset's identical product is
likely to cause consumer confusion as to the source of the goods unless Sunset takes additional

steps to distinguish its product on the marketplace. However, because Sunset may be able to cure the risk of consumer confusion with changes to its marketing of the product, the court declines to award Plaintiff its request for an injunction prohibiting the further sale of Sunset's filters. Accordingly, SoClean's Motion for Preliminary Injunction [#161] is GRANTED IN PART and DENIED IN PART as set forth further below.

I.   BACKGROUND

SoClean is a medical device company that designs, develops, and sells automated CPAP disinfecting devices. Marcarelli Decl. ¶ 3 [#165]. SoClean's devices command the lion's share of the market, accounting for 90% of the CPAP cleaning devices sold. Id. SoClean's devices work by circulating ozone through the customer's CPAP equipment to kill germs and bacteria. Id. ¶ 4. Excess ozone is discharged from the cleaner through a port, but first passes through a replaceable filter that converts the excess ozone into oxygen. Id.

In addition to being in the business of selling the CPAP cleaning devices, SoClean has sold replacement filters for its CPAP cleaning devices since 2013. Id. ¶ 6. SoClean has invested nearly $2 million promoting its filter sales through targeted emails as well as print and digital advertisements. Id. ¶¶ 15, 16. This investment has paid off as sales of replacement filters have accounted for approximately $80,000,000 in revenue since 2017. Id. ¶ 13. SoClean owns two U.S. Trademark Registrations for its Filter design: U.S. Reg. Nos. 6,080,195 and 6,286,680. However, SoClean is proceeding only as to the '195 registration (the "Mark") for the purpose of this motion.[1] Id. ¶ 8.

---

[1] In its Opposition [#175-1], Sunset plausibly argued that SoClean was not entitled to a presumption of validity as to the '680 Mark on account of the registration date. In response, SoClean has stated that it is content to proceed only as to the '195 Mark for the purposes of this motion.



U.S. Reg. No. 6,080,195

The features of the '195 Mark are depicted above. SoClean does not claim the color of the filter cartridge as part of its trade dress, nor does SoClean claim that Sunset infringes on its mark by virtue of the color of Sunset's filter. In line with the practices of the PTO, <u>see</u> Trademark Manual of Examining Procedure ("TMEP") § 1207.01(c)(iv), the elements of the Mark shown in dotted lines—the holes on the filter head and at the bottom of the filter—are not claimed as features of the Mark. The '195 Mark was registered on June 16, 2020.

It is uncontroverted that in February 2021, Sunset began marketing and selling replacement filter cartridges that competed with SoClean's filters. Sunset Answer ¶ 84 [#157]; Slosar Decl. ¶ 15 [#177]. Moreover, it is uncontroverted that Sunset's filters are copies of SoClean's filters. <u>See</u> Sunset Opp'n 16 [#175-1] (acknowledging that Sunset was copying SoClean's filters). Indeed, internal emails show Sunset's filters were designed as "knockoffs" of SoClean's filter design, <u>see</u> Wintner Decl., Ex. 8, Email from Tom Munar to Melissa Allis [#163-8], and that this was consistent with Sunset's broader business strategy, <u>see</u> Wintner Decl.,

Ex. 12, Sunset Strategic Planning Mem. [#182-12]. A comparison of the two filters reveals that

they are indeed indistinguishable except for a SoClean sticker on the SoClean filter.[2]



SoClean 2 Filter Kit



Sunset Knockoff of SoClean 2 Filter Kit

SoClean Mem. 12 [#162].[3] Shortly after Sunset began selling its competing version of the

SoClean filter, SoClean brought this action against Sunset. See Am. Compl., No. 21-cv-10131,

ECF No. 5 ¶¶ 117–30 (D. Mass. Mar. 9, 2021). SoClean's amended complaint alleges that

Sunset's sale of the filters infringes on SoClean's duly registered trademarks over the filter

design. Am. Compl. ¶ 125. Specifically, SoClean alleges that because of Sunset's infringement,

consumers "are likely to be confused into incorrectly believing there is an association, affiliation,

or sponsorship between SoClean and Sunset and their replacement filters." Id. ¶ 126. This

motion for a preliminary injunction followed.

---

[2] The parties submitted physical samples of the filters, the filter packaging, and the SoClean
CPAP cleaning device to the court.

[3] Both companies sell the filters as part of "Filter Kits" that include both the "cartridge filter"
(the grey rectangular item) and a "check valve." The cartridge filter is inserted into the interior of
the CPAP cleaning device, and the check valve is connected to tubing outside of the device.
SoClean Mem. 3 [#162]. SoClean makes no claim to the design of the "filter kit" or the check
valves here.

II.   LEGAL STANDARD

Under the Lanham Act, the court is authorized to grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" so as prevent infringement of a plaintiff's registered mark. 15 U.S.C. § 1116. Nevertheless, the issuance of a preliminary injunction before a trial on the merits can be held is an "extraordinary remedy" that shall enter only if the plaintiff makes a clear showing that it is entitled to such relief. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). This showing requires a movant to demonstrate: (1) that it has a reasonable likelihood of success on the merits; (2) that there is a likelihood of irreparable harm if an injunction is withheld; (3) that the balance of hardships between the parties weighs in the movant's favor; and (4) that the requested injunction would not conflict with the public interest. Kerrissey v. Com. Credit Grp., Inc., 359 F. Supp. 3d 151, 155 (D. Mass. 2019) (citing Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007)). Under the Trademark Modernization Act of 2020, a party seeking an injunction is entitled to "a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116(a).

III.   ANALYSIS

A.   Likelihood of Success on the Merits

Sunset argues that SoClean does not have a reasonable likelihood of success on the merits on two principal grounds. First, Sunset contends that SoClean's Mark is invalid and thus SoClean's infringement claim will necessarily fail. Second, Sunset contends that there is no likelihood of consumer confusion. These two arguments are addressed in turn.

1. *Validity of the Mark*

Plaintiff contends that the product design depicted in the '195 Mark is protectable trade dress under Section 43(a) of the Lanham Act. While the term "trade dress" was historically used in the context of trademark law to refer to the packaging and labelling of a product, courts have, under limited circumstances, broadened the reach of the Lanham Act's protections to include "'the design and appearance of [a] product together with the elements making up the overall image that serves to identify the product presented to the consumer.'" I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 35 (1st Cir. 1998) (quoting Chrysler Corp. v. Silva, 118 F.3d 56, 58 (1st Cir. 1997)). As the Supreme Court ruled in Qualitex Co. v. Jacobson Prod. Co., so long as the elements of the mark, be it the shape of a design or the color of the product alone, "can act as a symbol that distinguishes a firm's goods and identifies their source, without serving any other significant function," the mark is potentially eligible for protection under the Lanham Act. 514 U.S. 159, 166 (1995).

Where a Mark is unregistered, the burden of proof is on the plaintiff to prove that a trade dress mark is eligible for protection because it is used in commerce, non-functional, and distinctive. Yankee Candle Co. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 38 (1st Cir. 2001) (quoting Lund, 163 F.3d at 36). However, where, as here, the plaintiff has registered its mark on the principal register with the PTO, the mark enjoys a statutory presumption of validity (and thus is presumed to be used in commerce, non-functional, and distinctive). See 15 U.S.C. § 1115(a); see also J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 32:136 (5th ed. 2021) (noting that prima facie evidence of the "exclusive right to use" has been read by courts to include prima facie evidence of, inter alia, use in commerce, non-functionality, and distinctiveness). But this presumption "constitutes only prima facie and not conclusive evidence

6

of the owner's right to exclusive use of the mark," Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 200 n.6 (1985), and within five years of the date of registration, the marks remain contestable and the Act provides that defendants to a trademark action may raise as a defense to infringement any arguments "which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a).

Here, Sunset raises several arguments related to the Mark's validity. First, Sunset contends that, notwithstanding the registration, SoClean's Mark should not be presumed valid where Sunset is likely to prevail on its claim that the Mark should be cancelled and where the PTO examiner improperly issued the registration under the PTO's own procedures. Second, Sunset contends that the Mark is not protectable trade dress because it is functional. Third, Sunset argues that the Mark is not protectable trade dress because it is not distinctive.

i. *Whether SoClean is Entitled to a Presumption of Validity*

The Lanham Act provides that "[a] certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark . . . ." 15 U.S.C. § 1057. The First Circuit has interpreted this provision to mean that, by virtue of a mark being registered, the burden of proof is shifted to the defendant, "who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such use." See Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373 (1st Cir. 1980). As the First Circuit further explained in Borinquen Biscuit Corp. v. M.V. Trading Corp., "the effect of registration for a contestable mark is 'to shift the burden of proof from the plaintiff . . . to the defendant, who must introduce sufficient evidence to rebut the presumption . . . .'" 443 F.3d 112, 117–18 (1st Cir. 2006) (quoting Keebler, 624 F.2d at 373).

Sunset argues that SoClean should not enjoy the benefit of the presumption where Sunset is likely to prevail on its claim that SoClean engaged in fraud on the PTO in the procurement of

the Mark. As the Federal Circuit explained in In re Bose Corp., "[a] third party may petition to cancel a registered trademark on the ground that the "registration was obtained fraudulently." 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting 15 U.S.C. § 1064(3)). "In order to establish a claim of fraud in the procurement of a federal registration, plaintiff must prove the following by clear and convincing evidence: (1) that defendant made a false representation to the PTO regarding a material fact; (2) that defendant knew that the representation was false; (3) that defendant intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering the mark." Bay State Sav. Bank v. Baystate Fin. Servs., LLC, 484 F. Supp. 2d 205, 220 (D. Mass. 2007). In making this showing, "[t]here is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." In re Bose Corp., 580 F.3d at 1243 (quoting Smith Int'l, Inc. v. Olin Corp., 209 USPQ 1033, 1044 (T.T.A.B. 1981)).

Here, Sunset asserts that SoClean obtained registration of the Mark only through a false statement to the Examiner, representing that SoClean had been using the filter design for more than five years. Sunset supports its claim that this statement was false with Internet archive records showing that SoClean had, Sunset asserts, only started selling the filter design depicted in SoClean's registration application in 2018. Sunset Opp'n 6 [#175-1] (citing Labbe Decl. Ex. F [#178-6]). The pre-2018 filter design, post-2018 filter design, and the registered design are displayed below:



Labbe Decl. Exs. E, F, A [#178-5], [#178-6], [#178-1]. Even assuming that SoClean did change

the arrangement of the holes in the head of its filter around 2018, where the statement to the

Examiner was that SoClean had "substantially exclusive and continuous use of <u>the mark</u>" for the

previous five years and "the mark" expressly *disclaimed* the arrangement of the holes that

SoClean is alleged to have changed, Sunset's proof falls far short of establishing by clear and

convincing evidence that not only did SoClean make a false representation, but that it *knew* that

the representation was false and *intended* to deceive the examiner by that false representation.

Sunset further argues that the burden of proof should remain with Plaintiff where the

examiner failed to follow PTO procedures during his examination (and approval) of the Mark.

Sunset's complaints about the registration process for the '195 Mark appear well-founded. In

brief, SoClean applied for the '195 Mark in December 2019. <u>See</u> Labbe Decl. Ex. A at 8 [#178-

1]. For a mark to be registered, the applicant must establish that a mark is distinctive and, as

discussed further in Section III.A.1.ii, below, a PTO Examiner can approve a mark based either

on inherent distinctiveness or because it has acquired distinctiveness (i.e., secondary meaning).

However, because the '195 Mark is a product design mark, the Mark cannot be inherently

distinctive as a matter of law and thus it was SoClean's burden to establish secondary meaning

before the Mark could be approved. Based on the materials before the court, SoClean did not

submit any actual evidence of secondary meaning for the Mark with its application but instead

claimed that the Mark should be presumed to have obtained secondary meaning based on

SoClean having used the Mark in commerce for five years. See 15 U.S.C. § 1052(f) ("The

Director may accept as prima facie evidence that the mark has become distinctive, as used on or

in connection with the applicant's goods in commerce, proof of substantially exclusive and

continuous use thereof as a mark by the applicant in commerce for the five years before the date

on which the claim of distinctiveness is made."). The Examiner granted SoClean the benefit of

this statutory presumption and approved the Mark. Sunset contends this was in error as the

Trademark Manual of Examining Procedure provides:

> For matter that is not inherently distinctive because of its nature (e.g.,
> nondistinctive product design, overall color of a product, mere ornamentation, and
> sounds for goods that make the sound in their normal course of operation),
> evidence of five years' use is not sufficient to show acquired distinctiveness. In
> such a case, *actual evidence* that the mark is perceived as a mark for the relevant
> goods/services/classes would be required to establish distinctiveness.

TMEP § 1212.05(a). Sunset argues that because of this apparent error in the examination

process, SoClean should not enjoy the benefit of the statutory presumption.

Although Sunset's arguments raise questions as to whether the Examiner followed PTO

procedures in approving the Mark, those are not questions for this court to answer. While the

Lanham Act grants this court broad equitable powers to "determine the right to registration,

order the cancelation of registrations, in whole or in part, restore canceled registrations, and

otherwise rectify the register with respect to the registrations of any party to the action," 15

U.S.C. § 1119, Sunset has pointed to no authority for the proposition that this court may simply

ignore the statutory mandate that the court shall start any such analysis by accepting the

certificate of registration as "prima facie evidence" of the Mark's validity. See 15 U.S.C.

§ 1057(b). This, of course, does not mean that Sunset may not continue to challenge the

contestable aspects of the registration as provided by Congress but simply that Sunset carries the

burden of proof in doing so. Cf. Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1329 (Fed. Cir. 2004) (holding, in the content of the presumption of validity for patents, that "introspection and speculation into the examiner's understanding of the prior art [and] the completeness or correctness of the examination process" should be avoided as "the presence and 'strength' of the presumption of validity does not warrant inquiry into the examiner's understanding or competence or gullibility.").

Having concluded that SoClean is entitled to its Mark's presumption of validity, the court turns next to the question of whether Sunset has introduced sufficient evidence to rebut that presumption.

      ii.    *Whether SoClean's Mark is Distinctive*

As the Supreme Court explained in Wal-Mart Stores, Inc. v. Samara Bros., marks may be distinctive in one of two ways. 529 U.S. 205 (2000). First, a mark may be "inherently distinctive" if "its intrinsic nature serves to identify a particular source." Id. at 210 (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)). Second, a mark can still be distinctive, even if it is not inherently distinctive, "if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" Id. at 210 (quoting Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 851, n.11 (1982)). In Samara Bros., the Court held that product design marks could not, as a matter of law, be inherently distinctive because design, as opposed to other types of marks, "is intended not to identify the source, but to render the product itself more useful or more appealing." Id. at 213. Therefore, the Court held, "a product's design is distinctive, and therefore protectible, *only upon a showing of secondary meaning*." Id. at 216 (emphasis added). Because there is no disagreement that SoClean's Marks are product design marks, the question here turns on whether the Mark has obtained secondary meaning.

However, because SoClean's Mark is registered, the burden is on *Sunset* to offer evidence establishing that the Mark has *not* acquired secondary meaning.

Various factors may be considered for evaluating whether a trade dress mark has secondary meaning, including "the length and manner of the use of the trade dress, the nature and extent of advertising and promotion of the trade dress, and the efforts made to promote a conscious connection by the public between the trade dress and the product's source." Yankee Candle, 259 F.3d at 43 (citing Bos. Beer Co. P'ship v. Slesar Bros. Brewing Co., 9 F.3d 175, 182 (1st Cir. 1993)). "Other factors may include the product's 'established place in the market' and proof of intentional copying." Id. (citing Lund, 163 F.3d at 42). However, all of these considerations constitute only "circumstantial evidence" since "[t]he only direct evidence probative of secondary meaning is consumer surveys and testimony by individual consumers." Id. In light of the nature of the relevant factors, the question of whether a mark has obtained secondary meaning presents a fact-intensive inquiry with "vigorous evidentiary requirements." Defs.' Opp'n 17 [#175-1] (quoting Yankee Candle, 259 F.3d at 43). Furthermore, under the Supreme Court's jurisprudence, "it is particularly difficult to prove that a product design has acquired a secondary meaning." 1 McCarthy on Trademarks and Unfair Competition § 8:11.50 (5th ed. 2021); see also In Re Charles N. Van Valkenburgh, 97 U.S.P.Q.2d 1757 (T.T.A.B. 2011) ("An applicant faces a heavy burden in establishing the distinctiveness of a product design.").

Here, Sunset's central argument is that *SoClean* has failed to carry this heavy burden because SoClean has not put forth any direct or circumstantial evidence of secondary meaning. But where SoClean enjoys a presumption of validity (and thus, at least here, a presumption of secondary meaning), the burden is on *Sunset*, not SoClean, to satisfy the "vigorous evidentiary

requirements," either by direct or circumstantial evidence, to prove that the Mark has *not* obtained secondary meaning. Sunset has not demonstrated a likelihood of carrying this burden.

Sunset has not introduced any survey evidence tending to indicate that SoClean's product design has not acquired a secondary meaning, nor has Sunset put forth any other type of direct evidence, such as consumer or distributor testimonials, indicating that individual consumers do not associate SoClean's filter design with a single source. While consumer surveys "are not a prerequisite" for establishing or rebutting secondary meaning, Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc., 270 F.3d 298, 315 (6th Cir. 2001), they do carry significant weight in the analysis and may be dispositive.

Sunset also largely eschews presenting any circumstantial evidence tending to show that the Mark has not acquired secondary meaning and instead criticizes *SoClean's* failure to offer such evidence. Again, this argument fails where *Sunset* carries the burden of proof. Sunset does offer some circumstantial evidence that, it says, demonstrates a lack of secondary meaning but the evidence is equivocal, at best. Namely, Sunset argues that SoClean's advertisements "prove" that consumers do not associate the shape of SoClean's filters with the filters' source because SoClean does not tell consumers to buy their products based upon the shape of the filter but based instead upon a sticker showing SoClean's brand name. Sunset Opp'n 15 [#175-1]. But this argument does not suggest that consumers no longer expect a SoClean filter when they buy a filter of a certain shape, only that SoClean has taken steps to try to protect consumers from mistakenly purchasing knockoff filters. Sunset's only other evidence that SoClean's Mark has not obtained secondary meaning is Sunset's evidence suggesting that SoClean changed the location of the holes on the filter head sometime in 2018. Id. at 16. Even if the court were to accept, for the purposes of argument, Sunset's contention that SoClean materially changed the

shape of its filter design in 2018, this would not foreclose consumers associating both designs with SoClean.

In sum, while establishing secondary meaning carries a heavy evidentiary burden, particularly for product design marks, the PTO granted SoClean registration of the Mark, and under the Lanham Act and the First Circuit's precedent, the burden now shifts to Sunset to rebut the Mark's presumption of secondary meaning. Sunset has failed to carry that burden. Therefore, SoClean has a reasonable likelihood of establishing the Mark's distinctiveness.

   iii.   *Whether SoClean's Mark is Functional*

Sunset's next argument is that SoClean's Mark is functional and thus invalid. A feature of a mark is "functional," and therefore not subject to protection under the Lanham Act, where the feature "is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage,'" or "when it is essential to the use or purpose of the [product]" or "it affects the cost or quality of the [product]." TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 33 (2001) (quoting Qualitex, 514 U.S. at 165); Inwood Labs., 456 U.S. at 850. "[E]ssential" does not mean that a feature is strictly "necessary" for the product to function. That is, a design may still be considered functional, and thus not subject to trademark protection, even where alternative designs are possible. 532 U.S. at 34. Instead, a feature is "essential" where "the evidence shows that the design provides identifiable utilitarian advantages to the user; i.e., the product or container "has a particular shape because it works better in [that] shape." Valu Eng'g, Inc. v. Rexnord Corp., 278 F.3d 1268, 1274 (Fed. Cir. 2002) (internal punctuation and citation omitted); see also Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp., 986 F.3d 250, 258 (3d Cir. 2021), as amended (Mar. 10, 2021) ("'functional' means useful. To boil it down to a phrase: something is 'functional' if it works better in this shape.") (internal quotation omitted); AMID, Inc. v. Medic Alert Found. United States, Inc., 241 F. Supp. 3d 788, 819 (S.D. Tex. 2017) ("The

word 'essential' is a term of art; '[a] feature is essential to the use or purpose of a product if it serves any significant function other than to distinguish a firm's goods or identify their source'") (citations omitted). In contrast, a product configuration that is merely ornamental, incidental, or arbitrary (that is, a design that serves no utilitarian purposes) is not functional. TrafFix, 532 U.S. at 30.

Beyond direct evidence that a feature of a mark is functional because of its utilitarian qualities, circumstantial evidence may also be relied upon to establish functionality (or non-functionality). Although there is no set of exhaustive factors, courts have commonly looked to the same set of indicators drawing from the Court of Customs and Patent Appeals' decision in In re Morton-Norwich Prod., Inc., 671 F.2d 1332 (C.C.P.A. 1982). These are: (1) whether a utility patent had claimed the functional features of the design; (2) whether the product is marketed based on the feature's usefulness; and (3) whether there are alternative designs that would perform the same function without sacrificing cost or utility. Id. at 1341; see also Ezaki Glico, 986 F.3d at 258.

The court starts with the direct evidence. There are two primary features of SoClean's Mark, the shape of the bottom end of the filter (the "body") and the shape of the top end (the "head"). The direct evidence strongly suggests that the features of the body of SoClean's Mark are functional, as its shape takes on the shape of the filter receptacle to fit firmly, but not too firmly, into the CPAP cleaning device. Piper Decl. ¶¶ 35–36 [#176]. While SoClean contends that other shapes for the filter body could also fit in the receptacle—for example any shapes with a hexagonal or circular cross-section—Sunset persuasively argues that any other shape would not only increase manufacturing costs but would also compromise functionality by reducing the amount of filter media that can be contained in the filter body. Id. ¶¶ 42–45.

Likewise, the direct evidence suggests that many features of the head of the Mark are functional. As Sunset's expert points out, the head of the filter design must protrude slightly not only to provide a seat for the O-ring that creates a seal between the filter and the device, but also to provide a place for the filter cartridge to be easily grasped by the user. Id. ¶¶ 31–32. Further, the head of the filter must be large enough to have holes on two surfaces to lessen the likelihood of a blockage. Id. ¶ 33. SoClean does not rebut any of this evidence.

Turning next to the indirect evidence, SoClean's argument focuses on the availability of alternative designs.[4] See Nayfeh Decl. ¶ 13 [#164]; SoClean Mem. 10–11 [#162]. Namely, SoClean contends that Sunset could have selected many different designs that did not copy SoClean's mark without sacrificing function or cost, but Sunset nevertheless marketed an exact replica of SoClean's product. Sunset responds that the availability of alternative design possibilities is irrelevant to the court's analysis. Sunset Opp'n 10 [#175] (citing TrafFix, 532 U.S. at 33).

There is a split of authority as to the proper weight that a court should assign to the availability of alternative designs. At least four circuits have held that evidence that a competitor could have pursued an equally capable alternative design is a signal, often a strong one, of a mark's non-functionality. For example, in Moldex-Metric, Inc. v. McKeon Prod., Inc., the Ninth Circuit examined trade dress claiming a bright green color for ear plugs. 891 F.3d 878, 880 (9th Cir. 2018). The mark-holder's competitor successfully argued at the district court that the

---

[4] While the parties briefly address other circumstantial factors, they carry little probative weight in this case. For example, while there is no utility patent covering the design of the Mark, the absence of a utility patent is significantly less probative of non-functionality than is the presence of a utility patent, which almost universally suggests functionality. There is also no evidence in the record that SoClean explicitly promotes the utilitarian advantages of the filter design, but SoClean's advertising of the product also does not point to the product's ornamental features either and instead markets the product purely for its functional qualities.

visibility of the bright green color was "essential to the use or purpose of the ear plugs—to increase visibility and facilitate safety compliance checks" and was therefore functional and ineligible for trademark protection. Id. The Ninth Circuit nonetheless reversed the district court and ruled that the mark-holder's evidence that the competitor could have used any number of alternative shades to achieve the same result weighed against a finding of functionality. Id. at 887. The Second, Fourth, Seventh, and Federal Circuits have similarly looked to alternative designs as important evidence of functionality. See Cartier, Inc. v. Sardell Jewelry, Inc., 294 F. App'x 615, 621 (2d Cir. 2008) ("the trade dress is not 'functional' because there are many alternative designs that could perform the same function"); McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307 (4th Cir. 2014) (holding that the availability of alternative designs was important for assessing functionality of a mark); Bodum USA, Inc. v. A Top New Casting Inc., 927 F.3d 486, 493 (7th Cir. 2019) (finding that "a plethora of evidence regarding the availability of alternative designs . . . supported [the mark's] lack of functionality.").

Other Circuits have held that evidence of alternative designs should not weigh in the functionality analysis.[5] Each of these Circuits that have found evidence of alternate designs

---

[5] For example, in Ezaki Glico, the Third Circuit recently considered a claim for trademark infringement brought by the manufacturer of the popular "Pocky" chocolate-covered cookie sticks against a competitor that brough to market a similar product that, as the Circuit noted, "looks remarkably like Pocky." 986 F.3d at 254. The plaintiff alleged that the competitor could have shaped its product differently than Pocky, and, as Plaintiff does here, offered multiple examples of alternative designs that assertedly worked as well as Pocky but did not look like Pocky. The Third Circuit ruled that the presence of alternative product designs was not relevant to the functionality inquiry because "every aspect of Pocky is useful" and the availability of alternative designs did not change that fact. Id. at 260. At least two other circuits are in accord with the Third Circuit's opinion that alternative designs are inapposite to the analysis. See In Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH, 289 F.3d 351, 355 (5th Cir. 2002) (holding that the "availability of alternative designs is irrelevant" to the functionality inquiry); Groeneveld Transport Efficiency, Inc. v. Lubecore International, Inc., 730 F.3d 494, 506–07 (6th Cir. 2013) (holding that the Supreme Court's precedent "makes clear that [plaintiff's] argument about the availability of alternative . . . designs is misguided" and that so long as plaintiff's design "was

"irrelevant" and "misguided" cite the Supreme Court's ruling in <u>TrafFix</u>. Prior to <u>TrafFix</u>, courts had held that the question of a design's "functionality" must be considered in light of "the effect on competition." <u>Morton-Norwich</u>, 671 F.2d at 1341. With this focus on competitive necessity, courts held that where there were alternative designs available, a prohibition of imitating others' marks would not "deprive [competitors] of something which [would] substantially hinder them in competition." <u>Id.</u> at 1340 (quoting Restatement (First) of Torts § 742). Put differently, competitors did not have an intrinsic "*right* to slavishly copy articles which are not protected by patent or copyright" but could establish a "*need* to copy those articles" where, for example, alternative designs were not available. <u>Id.</u> at 1339 (emphasis added). Under this framework, SoClean's evidence of alternative filter designs would establish the non-functionality of SoClean's filter since Sunset would not be able to show any competitive need to copy SoClean's filter. These Circuits view the Supreme Court's decision in <u>TrafFix</u> to have rejected this focus on competitive necessity.

The Supreme Court's decision, however, is more nuanced. The Court did not reject its prior observation that "a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" <u>TrafFix</u>, 532 U.S. at 32 (quoting <u>Qualitex</u>, 514 U.S. at 165). Instead, the Court rejected the notion that this was a "necessary test" or provided a "comprehensive definition." <u>Id.</u> at 33. Instead, a feature "is also functional" when it is essential to the use or purpose of the device or when it affects the cost or quality of the device. <u>Id.</u> Accordingly, where a mark has been found to be functional because it is essential to the use or purpose of the device or because it affects the cost or quality of the device,

---

substantially influenced by functional imperatives or preferences" it would be "error [to inquire] about possible alternative designs").

"competitors need not explore whether other [designs] might be used" since, "[i]n general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." 532 U.S. at 29, 33–34.

In TrafFix, there was overwhelming evidence—including an expired utility patent claiming the very same design—establishing the functionality of the claimed design based on these other grounds. Indeed, when the Court noted that competitors "need not explore" other design possibilities, the Court *had already* reached the conclusion that the design was functional. Id. at 33–34 ("*the functionality of the spring design* means that competitors need not explore whether other spring juxtapositions might be used"). This suggests that the Court's ruling was that competitors need not avoid copying functional designs, not that the presence of alternative designs is an irrelevant for assessing functionality. For this reason, the court agrees with those courts and commentators that have held that alternative designs may still be relevant in assessing whether a mark is functional in the first place. See also Valu Eng'g, 278 F.3d at 1276 (Fed. Cir. 2002) ("we do not read the Court's observations in TrafFix as rendering the availability of alternative designs irrelevant"); J. Thomas McCarthy, 1 McCarthy on Trademarks and Unfair Competition § 7:75 (5th ed. 2021) ("In my view, the observations of the Supreme Court in TrafFix do not mean that the availability of alternative designs cannot be a legitimate source of evidence to determine in the first instance if a particular feature is in fact 'functional.'"). Based on this court's understanding of the holding in TrafFix, the evidence of other design options for Sunset's knockoff filter does not, by itself, compel Sunset to use an alternative design if the design SoClean chose is essential to the use or purpose of the device or affects the cost or quality of the device, but it does constitute evidence that there are some arbitrary elements to SoClean's filter that Sunset decided to copy where functionality has not otherwise been established.

SoClean's Mark therefore comprises both functional and non-functional features. As discussed above, the body of the Mark is entirely functional as it is devoid of any arbitrary or ornamental elements and maximizes the fit in the filter. In contrast, while the design of the head of the Mark is bounded by functional considerations, there are arbitrary elements related to the specific size and shape of the head that are unrelated to the head's functional features. Where, as here "a proposed mark includes both functional and non-functional features . . . the critical question is the degree of utility present in the overall design of the mark." In re Becton, Dickinson & Co., 675 F.3d 1368, 1373 (Fed. Cir. 2012). This evaluative decision of the "degree" of utility in the overall design is a question of fact that will, ultimately, be put to a jury. See McAirlaids, 756 F.3d at 310 ("Functionality . . . is a question of fact that, like other factual questions, is generally put to a jury"). For now, based upon the statutory presumption of validity (and therefore non-functionality) that the Mark enjoys, and the court's finding that the Mark has at least some non-functional features, the court concludes that SoClean has a reasonable likelihood of prevailing on Sunset's challenge to the validity of the Mark based on non-functionality.

### 2. *Likelihood of Confusion*

The court next turns to the merits of Plaintiff's trademark infringement claim and assesses the "likelihood of confusion" among the filters' consumers. In the First Circuit, the court must consider eight criteria: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between their channels of trade; (4) the relationship between advertising; (5) the classes of the prospective purchasers; (6) any evidence of actual confusion; (7) Sunset's subjective intent in using SoClean's marks; and (8) the overall strength of SoClean's marks. See Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60–61 (1st Cir. 2008) (citing

Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 10 n.6 (1st Cir. 2008)). No single factor is necessarily dispositive in this evaluative and circumstantial assessment. Id. As discussed further below, the likelihood of a consumer being confused as to the origin or source of the goods sometimes turns on whether the consumer is shopping for the goods in stores or online and thus the court considers both.

i.   *The Similarity of the Marks and the Similarity of the Goods*

Sunset does not dispute that the marks (and because the goods here are the Marks, the goods as well) are identical. However, identity between the marks and the goods may be of less weight in a product configuration case than in the case of a written mark or product packaging case. As the Third Circuit explained in Versa Prod. Co. v. Bifold Co. (Mfg.), because consumers have the benefit of being able to look at the product packaging, trademarks, and advertising used to market the product, similarity in appearance "does not by itself strongly suggest a likelihood of confusion." 50 F.3d 189, 202–03 (3d Cir. 1995).

Applying the Third Circuit's reasoning in Versa here, the court bifurcates the similarity analysis between those consumers who purchase their filters in brick-and-mortar stores and those who purchase their filters in online commerce. In-store consumers have the benefit of Sunset (and SoClean's) product packaging which allows consumers to rely on the product packaging and the trademarks on that packaging to differentiate a SoClean filter and a Sunset filter. While the product packaging does not create a stark contrast between the two products, the differences are sufficient to suggest that a reasonably prudent consumer would not be confused between the two:

  

SoClean website          SleepDirect.com (authorized SoClean reseller)          Sunset Healthcare

Wintner Decl. Ex. 2, [#163-2]; Labbe Decl., Ex. E [#178-5].

In contrast, because of the manner that Sunset has marketed its competing filter online, these consumers do not enjoy the same benefit of being able to discern the product's source based upon the product packaging and trademarks. Namely, SoClean has offered evidence that Sunset markets its filters on its website and third-party retailers (e.g., Amazon) by displaying only the filter cartridge. Any reference of the source of the filter cartridge on these pages can only be found on the margins of the page and in small plain text. As is evident from the screenshots displayed below, these source indicators are insufficient, as they do not give the reasonably prudent consumer a sufficient basis for determining whether they are purchasing a SoClean product or a knockoff competitor:



Wintner Decl., Ex. 3 [#163-3].



Wintner Decl., Ex. 10 [#163-10]. Accordingly, the court finds that the similarity between the

marks is accorded substantially less weight for in-store consumers due to the available product

packaging that serves as a source indicator. However, for the purposes of online consumers, the marks are identical, and this finding weighs strongly in favor of finding a likelihood of confusion.

      ii.    *The Parties' Channels of Trade, Advertising, and Classes of Prospective Purchasers*

The court considers the channels of trade, advertising, and classes of prospective purchasers together because "they tend to be interrelated." Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 19 (1st Cir. 2004) (citing Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 204 (1st Cir. 1996)). Here, Sunset does not dispute that these factors favor SoClean because there is significant overlap between the companies' channels of trade, advertising, and prospective consumers and that this is true for both online and in-store consumers.

      iii.    *Evidence of Actual Confusion*

Although evidence of actual confusion is "not essential" to finding a likelihood of confusion, it is "'often deemed the best evidence of possible future confusion.'" Bos. Duck Tours, LP, 531 F.3d at 25 (quoting Borinquen Biscuit, 443 F.3d at 120). Here, SoClean offers no evidence of actual confusion.[6]

      iv.    *The Defendant's Intent*

Sunset does not dispute that it intentionally copied SoClean's filter design. The First Circuit has recognized that in cases of intentional copying, the court may presume that the infringer meant to create a similarity of appearance and succeeded in doing so. See Bos. Athletic

---

[6] Dean Marcarelli, SoClean's Chief Marketing Officer, includes in his declaration a second-hand anecdote where one of his employees attempted to order a Sunset filter but received a SoClean filter. See Macarelli Decl. ¶ 38 [#165]. There are many explanations for this occurrence, assuming it happened as Marcarelli describes, and, without more, the court does not find that it constitutes relevant evidence of actual confusion.

Ass'n v. Sullivan, 867 F.2d 22, 34 (1st Cir. 1989). Sunset counters that a presumption of confusion should not apply in the case of a product configuration mark. Sunset Sur-Reply 3 [#186]. In support of this proposition, Sunset again relies upon the Third Circuit's opinion in Versa, where that Circuit held that intentional copying in a product design case should result only in a presumption of likelihood of confusion where the alleged infringer held an intent to confuse or deceive and only where the product's labeling and marketing are also affirmatively misleading. 50 F.3d at 208. The Third Circuit's reasoning to limit the significance of intentional copying in product design cases finds some support in this Circuit, as the First Circuit has indirectly recognized that there is an important distinction between cases where an asserted infringer has attempted to copy the successful features of a mark and where an asserted infringer has intentionally appropriated a mark to confuse consumers. See Bos. Duck Tours, LP, 531 F.3d at 26 (quoting Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 124 (2nd Cir. 2001)) ("While intentional copying can raise a presumption of consumer confusion, '[t]he intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product.'").

Here, however, there is some evidence to suggest that Sunset not only intentionally copied the successful features of SoClean's filter so that it might sell an equally effective competing filter, but also that Sunset was intentionally attempting to confuse the consumer as to the source of the goods. Namely, Sunset has provided no explanation, either in its briefs or at the hearing, for why its filters are identical in color to SoClean's, and the court can conceive of no explanation other than that Sunset was attempting to mislead consumers into believing that its filters were SoClean filters. Sunset is quick to argue—correctly—that color is not a feature of the Mark and that it should not be liable for infringing as to color. Nonetheless, even though color is

25

not protected here, Sunset's imitation of the color is circumstantial evidence suggesting that Sunset was not merely "imitating the successful features" of SoClean's design, but "inten[ding] to deceive purchasers as to the source of the product." Nora Beverages, 269 F.3d at 124.

The evidence suggesting that Sunset intended to deceive consumers as to the source of the goods is strongest in the case of Sunset's online marketing efforts, where Sunset has apparently avoided highlighting the Sunset brand and has instead emphasized the registered filter design itself. See Wintner Decl., Exs. 3 & 10 [#163-3], [#163-10]. In contrast, the evidence of intentional deception is weaker for Sunset's in-store marketing since Sunset sells the filter using product packaging that, while similar to SoClean's product packaging, is more similar to Sunset's packaging for its other respiratory care products. See Slosar Decl. ¶ 27 [#177]. Furthermore, Sunset also includes its trademark prominently on the packaging. See Labbe Decl., Ex. E [#178-5]. These practices suggest that, at least for in-store sales, Sunset is not intending to create consumer confusion as to the source of the goods.

v.    *The Strength of Plaintiff's Mark*

The last consideration is the strength of SoClean's Mark. To start, as a product design mark, particularly one largely devoid of arbitrary or ornamental features, SoClean's Mark is inherently weak. See Samara Bros., 529 U.S. at 212 (holding that "design, like color, is not inherently distinctive."). This presumption is, of course, rebuttable. Here, SoClean argues that its Mark is strong because it has acquired secondary meaning and its Mark is therefore distinctive.[7] SoClean Mem. 16 [#162]. However, as discussed above, there is a dearth of evidence in the

---

[7] SoClean also points to a recent default judgment that it obtained against several hundred entities as evidence of the strength of the Mark. SoClean Mem. 16 [#162]. Had that court entered judgment in favor of SoClean in a contested case, SoClean's argument would carry some weight. However, where the Defendants defaulted, the judgment in SoClean's favor is not particularly informative.

record supporting SoClean's assertion that its Mark has (or has not) obtained secondary meaning, and to the extent that the court concludes that SoClean has a reasonable likelihood of success on the question of secondary meaning, it is <u>only</u> because of the statutory presumption of validity the Mark holds by virtue of its registration. But this statutory presumption of *validity* does not create a presumption of *strength*. <u>Cf.</u> <u>Attrezzi, LLC v. Maytag Corp.</u>, 436 F.3d 32, 40 (1st Cir. 2006) ("The factors commonly considered as to strength—e.g., wide recognition, efforts to promote— are concerned with practical matters and not the legal classification of the mark.") (internal citation omitted). Where SoClean has not offered any evidence of wide recognition or its efforts to promote the Mark (as opposed to the product), the court finds that SoClean's Mark is weak.

### 3.   *Conclusion on the Likelihood of Success on the Merits*

Although SoClean faces hurdles for establishing a likelihood of confusion on the merits—namely the weakness of SoClean's Mark combined with the absence of any evidence of actual confusion—SoClean has established a likelihood of being able to show, at least for Sunset's online sales, that Sunset has intentionally copied SoClean's Mark in an attempt to deceive consumers as to the product's source. In this Circuit, evidence of an intent to deceive creates a rebuttable presumption of likelihood of confusion. <u>See</u> <u>WCVB-TV v. Boston Athletic Ass'n</u>, 926 F.2d 42, 45 (1st Cir. 1991) ("It makes sense to presume confusion about a relevant matter . . . from such an intent, at least in the absence of contrary evidence."). Moreover, the First Circuit has noted that where, as here, "the parties are direct competitors, the most important factor in the . . .  analysis is the similarity-of-marks inquiry." <u>Bos. Duck Tours</u>, 531 F.3d at 26 (citing <u>McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC</u>, 511 F.3d 350, 367 (3d Cir. 2007)). As set forth above, although there is a high degree of similarity between the marks, that similarity carries little weight in the case of Sunset's in-store sales due to the availability of

distinguishing product packaging but carries significant weight in the case of online sales where Sunset's marketing practices have created near identity its product and SoClean's Mark. Accordingly, the court finds that SoClean has a reasonable likelihood of success on the merits as to Sunset's online marketing and sales of its competing filter but not as to Sunset's in-store sales of the same.

B.  Potential for Irreparable Injury

In most cases, a preliminary injunction may not issue unless the plaintiff seeking preliminary relief demonstrates that irreparable injury is likely in the absence of an injunction. Winter, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). Here, however, under the Trademark Modernization Act of 2020, SoClean is entitled to a (rebuttable) presumption of irreparable harm once the court has found that SoClean has a likelihood of success on the merits. 15 U.S.C. § 1116(a). Sunset has not attempted to rebut this presumption. See Sunset Opp'n 20 [#175-1].

C.  Fashioning Preliminary Relief, Weighing the Equities, and the Public Interest

Before issuing a preliminary injunction, this court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24. To do so, the court must first identify the equitable relief under consideration. Even though the court has found that SoClean has a reasonable likelihood of succeeding on its claim that Sunset is acting in violation of the Lanham Act at least to its online sales and marketing, the court is not obligated to grant the injunction as requested. See TVA v. Hill, 437 U.S. 153, 193 (1978) ("a federal judge sitting as a chancellor is not mechanically

28

obligated to grant an injunction for every violation of law"). Instead, "[t]he Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases," S.E.C. v. Wencke, 622 F.2d 1363, 1371 (9th Cir. 1980), and the court should go no further than necessary to "prevent further injury" and "minimize the harmful effects of the defendant's wrongful conduct." CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 620 (1st Cir. 1995); see also Strahan v. Coxe, 127 F.3d 155, 171 (1st Cir. 1997) ("The district court was not required to go any farther than ensuring that any violation would end").

Here, Plaintiff has requested that the court preliminarily enjoin Sunset from using, selling, offering for sale, or making in the United States Sunset's knockoff version of the Filter and Check Valve Kit for SoClean as well as "any other product" that infringes its registered marks. SoClean Mot. 3 [#161]. Although SoClean's requested relief would certainly end any possible statutory violation, it goes much further than necessary to do so. As an initial matter, enjoining Sunset's in-store sale of competing filters is not warranted where SoClean has established a likelihood of success only as to Sunset's online marketing and sales of the filter. Moreover, Sunset's potential liability in this matter does not arise from Sunset merely selling knockoff versions of the SoClean filter (indeed, as SoClean has asserted no intellectual property right over the filter, the filter is subject to copying) but from Sunset engaging in business practices that are likely to cause consumer confusion. Accordingly, an injunction prohibiting Sunset from selling competing filters goes too far where an injunction that prohibits Sunset from engaging in those practices that result in consumer confusion will likely be sufficient to prevent further injury until the court can reach the merits of this action. Accordingly, the court will

consider only injunctive relief that requires Sunset to clearly associate its online marketing and sales of the competing filter with the Sunset brand.

Having so limited the injunctive relief under consideration, the balancing of the harms that might result from the grant or denial of preliminary relief as well as considerations of the public interest weigh decidedly in SoClean's favor. The court does not anticipate that Sunset will face substantial costs associated with complying with this order since it allows Sunset to continue to sell its competing filters in their current packaging. On the other hand, if the court were not to grant SoClean at least partial injunctive relief, SoClean has established a likelihood that both SoClean and consumers will be harmed since consumers will face confusion as to the source of these goods. For the same reason, as is almost always the case in trademark cases where the Plaintiff has established a likelihood of consumer confusion, the public interest favors granting the injunction. See Pub. Impact, LLC v. Bos. Consulting Grp., Inc., 169 F. Supp. 3d 278, 296 (D. Mass. 2016).

IV.   CONCLUSION

For the reasons set forth above, the court finds that SoClean has established a reasonable likelihood of success on its Lanham Act claim and that the principles of equity favor the issuance of a preliminary injunction pending a resolution on the merits. Accordingly, the following is ORDERED:

Defendant Sunset and its parent companies, subsidiaries, representatives, and agents are hereby enjoined from marketing the Sunset CAP1007S-KIT Filter and Check Valve Kit for SoClean using images of the filter cartridge alone. Any image, drawings, or other depictions of Sunset's filter cartridge used for the purposes of promotion, marketing and/or sales shall

prominently display the Sunset brand name in a manner that leaves no reasonable confusion that what is being sold is a Sunset brand filter.

If there is any uncertainty as to the scope of this order, the parties may request a status conference and/or submit proposed marketing materials to the court.

Sunset shall be in compliance with this order no later than September 1, 2021.

IT IS SO ORDERED.

Date: August 13, 2021

/s/ Indira Talwani
United States District Judge