UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SOCLEAN, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10351-IT |
| | * | |
| SUNSET HEALTHCARE SOLUTIONS, | * | |
| INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

November 29, 2022

TALWANI, D.J.

Defendant Sunset Healthcare Solutions, Inc. ("Sunset") moves to enforce a purported

agreement between itself and Plaintiff SoClean, Inc. ("SoClean") to settle this consolidated

action. See Motion to Enforce Settlement Agreement [Doc. No. 234]. SoClean opposes the

motion, claiming that its former counsel did not have authority to bind SoClean to an agreement,

that board approval was a condition to the agreement, and material terms remain outstanding.

See Opposition to Motion to Enforce Settlement Agreement [Doc. No. 239]. For the following

reasons, Sunset's Motion [Doc. No. 234] is DENIED.

I.   **Background**

SoClean has brought two separate actions against Sunset: the first alleges patent

infringement and other claims related to Sunset's sale of a CPAP cleaner known as the "Zoey"

(Civil Action 20-cv-10351); and the second alleges patent infringement related to Sunset's sale

of the Zoey and trademark infringement in connection with Sunset's sale of filter kits designed

for SoClean's CPAP cleaner known as the "SoClean 2" (Civil Action No. 21-cv-10131). The

court granted the parties Joint Motion to Consolidate Cases [Doc. No.152], see Order [Doc. No.

153], mediation before a Magistrate Judge failed, see Report [Doc. No. 156], and the consolidated action proceeded forward on SoClean's claims and Sunset's counter-claims.

On October 21, 2021, Thomas Wintner, then-counsel of record for SoClean, emailed John Labbe and Mark Izraelewicz, counsel of record for Sunset, asking to "take your temperature on restarting discussion about a potential resolution to our case." Decl. of John R. Labbe in Support of Def's Motion to Enforce ("Labbe Decl.") Ex. A. 2 [Doc. No. 236-5].[1] Mr. Wintner stated that he was "not envisioning another mediation; just a discussion amongst counsel." Id. He offered to "get the ball rolling with a proposal" and noted that "if your client doesn't want you guys to have these informal discussions with us," SoClean's counsel would proceed with litigation as planned. Id. On October 27, 2022, Mr. Labbe responded that Sunset was "OK with us talking with you about this" and counsel set up a "quick call" for November 2, 2021. Id. at 3-4; see Labbe Decl. Ex. B 2 [Doc. No. 236-6].

On November 8, 2021, Mr. Labbe sent Mr. Wintner and other counsel for SoClean sales figures for the filter products in question. Labbe Decl. Ex. A 8 [Doc. No. 236-5]. However, Mr. Labbe advised Mr. Wintner that "we do not have permission from Sunset to allow you to share this information with SoClean." Id. at 8-9. Mr. Wintner responded that counsel "will await your instructions on what we can and can't share with SoClean" and requested a "similar updated file for Zoey sales." Id. at 8.

On a November 22, 2021 email, Mr. Wintner asked Mr. Labbe, "if you have been able to get any further clearance on sharing updated Zoey numbers with me." Id. at 15. Mr. Labbe wrote that he was still waiting for the Zoey numbers, and Mr. Wintner responded, "my client is ready

---

[1] Mr. Wintner copied his then-co-counsel, Andrew Skale, on the email communication. Mr. Skale and Mr. Izraelewicz continued to be included throughout the email exchange between Mr. Labbe and Mr. Wintner described herein.

to make a proposal, but doesn't want to do so without knowing the Zoey numbers." Id. at 14. On November 24, 2021, Mr. Labbe wrote that he was in touch with his client, but still did not have those numbers. Id. at 13. On December 3, 2021, Mr. Labbe provided Mr. Wintner updated sales figures for both the Zoey and the filters but designated the material "as Highly Confidential-Attorneys' Eyes Only under the protective order." Id. at 12. Mr. Labbe wrote further that "[i]f you would like to discuss what level of information you may share with your client for advising them on possible settlement discussions, please let us know, although our view is the same as what we discussed earlier about the filters." Id.

On December 8, 2021, Mr. Wintner wrote to Mr. Labbe and Mr. Izraelewicz, "I have consulted with our clients and here is what they propose regarding a potential way to resolve the pending litigation." Id. at 18. The email set forth the proposal, and explained that "these are very rough terms, but the key points are there." Id. at 18-19.

On December 10, 2021, Mr. Labbe emailed Sunset's counteroffer. Id. at 26. Mr. Wintner wrote back that he had been tied up but would "discuss with our client as soon as possible." Id. at 30. On December 13, 2021, Mr. Labbe and Mr. Wintner exchanged emails about certain language changes in the proposal. Id. at 29. On December 14, 2021, Mr. Wintner asked for a phone call to discuss "a few questions from our clients." Id. at 36-37.

On January 4, 2022, Mr. Wintner emailed Mr. Labbe with a counteroffer. Id. at 45. On January 5, 2022, Mr. Labbe emailed Mr. Wintner with Sunset's further counteroffer. Id. at 54. Mr. Wintner replied on January 7, 2022, that he had "passed along your latest counterproposal to SoClean" and that "they had reviewed and are willing to agree" to certain terms "but they are holding firm" to other terms. Id. at 59. Mr. Wintner stated further that he did not imagine that his co-counsel Skale or he "will be able to get them very far off that number." Id. In response, Mr.

Labbe presented a further counteroffer. Id. at 65. On January 10, 2022, Mr. Wintner emailed that he communicated the offer to his "clients" and would get back Mr. Labbe. Id. at 72. That same day, Mr. Wintner communicated that "[t]he SoClean executive team will be meeting about Sunset's latest proposal tomorrow morning, so hopefully I will have something later in the day tomorrow." Id. at 80. On January 11, 2022, Mr. Wintner emailed that his client had reviewed the January 7, 2022 Sunset counteroffer, was holding firm on one term, was rejecting another, and suggested a new term. Id. at 88. He asked Mr. Labbe to "[l]et us know your thoughts," and set up a call for January 12, 2022. Id. at 88, 101-02.

On January 13, 2022, Mr. Wintner emailed another counteroffer. Id. at 117. Mr. Wintner noted that he was ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████ On January 17, 2022, Mr. Labbe responded with another counter from Sunset. Id. at 118. On January 20, 2022, Mr. Labbe followed up, and asked for a call, which they had later that day. Id. at 120, 127. On the morning of January 21, 2022, Mr. Wintner emailed Mr. Labbe, stating that he had "spoken again" with his client, that ███████████████████████████ ████████████████████████████████████ Id. at 127. Mr. Wintner provided further details and concluded that "[w]e would have a deal at these numbers." Id.

Later that day, Mr. Labbe and Mr. Wintner communicated by phone. Id. at 131. Mr. Labbe did not accept SoClean's offer, but made yet another counteroffer. Id. At 5:48 p.m. that evening, Mr. Wintner wrote that he had communicated with his client who would be meeting on Monday, and that he did not think they would have final agreement on terms before the court status scheduled for that Monday. Id. at 128. He wrote further that he thought they could report

to the court that they were "very close to an agreement on terms" and "hopeful that a settlement can be reached and papered" within a few weeks. Id.

At the January 24, 2022 status conference, counsel reported that they were approaching settlement and jointly requested that the court stay the case for 60 days. Elec. Clerk's Notes [Doc. No. 222]. The court granted the request. Id.; see Elec. Order [Doc. No. 223].

On February 2, 2022, Mr. Labbe emailed Mr. Wintner that Mr. Labbe had "communicated Sunset's last settlement counter-offer to you by phone" on January 21, 2022. Labbe Decl. Ex. A 131 [Doc. No. 236-5]. He asked Mr. Wintner for a follow up because "at that time, we thought the parties were very close to an agreement." Id. at 131. Mr. Wintner replied that he was in trial and would follow up next week. Id. at 134. On February 9, 2022, Mr. Labbe wrote Mr. Wintner again to check in on the status. Id. Mr. Wintner responded that he would be speaking with his client the following day and that he would follow up soon. Id. at 138.

On February 10, 2022, Mr. Labbe and Mr. Wintner spoke by phone. Labbe Decl.¶ 5 [Doc. No. 236] (authenticating handwritten notes as notes of his calls with Mr. Wintner); Labbe Decl. Ex. B 7 [Doc. No. 236-6] (notes); Decl. of Thomas H. Wintner ¶¶ 4, 6 ("Wintner Decl.") [Doc. No. 239-1] (discussing February 10, 2022). Mr. Wintner "recall[s] mentioning" during the February 10, 2022 call "that any settlement would need to be subject to a final written settlement agreement, including approval by SoClean's board." Wintner Decl. ¶ 6 [Doc. No. 239-1]. Mr. Wintner's recollection is not disputed by Mr. Labbe.

Both sides agree that Mr. Wintner made a further proposal during the phone call, to which Mr. Labbe agreed. SoClean Mem 4 [239]; Sunset Mem. 4 [235]. The next morning, Mr. Labbe wrote that "[w]e have a deal to settle the case on the following terms, which you communicated to me yesterday." Labbe Decl. Ex. A 143 [Doc. No. 236-5]. Mr. Labbe then listed

those terms. Id. Mr. Wintner responded that "this looks right to my eye," and that he would

prepare a draft agreement and reach out if there was anything to discuss. Id. at 145. On February

21, 2022, Mr. Labbe wrote to check in on the status of the draft agreement. Id. at 148. On

February 22, Mr. Wintner wrote to say that the "settlement is still under review by SoClean's

board." Id. at 152. The record includes no response from Mr. Labbe. On March 2, 2022, Mr.

Wintner wrote to report that SoClean's Board of Directors were unwilling to approve the

settlement. Id.

On March 23, 2022, SoClean's current counsel filed their Notices of Appearance [Doc.

Nos. 225, 226], and Mr. Wintner and his co-counsel filed Notices of Withdrawal of Appearance

[Doc. Nos. 227, 228, 229].

On March 30, 2022, counsel reported to the court that they had differing views as to

whether a settlement had been reached. See Elec. Clerk's Notes [Doc. No. 230]. On April 8,

2022, Sunset filed its Motion to Enforcement Settlement Agreement [Doc. No. 234], which

SoClean opposed.

## II.   **Discussion**

Sunset alleges that by February 11, 2022, the parties had come to an enforceable

settlement agreement because (1) the parties had agreed to all material terms, (2) SoClean's

counsel, Mr. Wintner, had actual authority, or alternatively apparent authority, to bind SoClean

to the settlement terms, and (3) SoClean board approval was not a condition to the settlement.

SoClean disputes all points, alleging that there were material terms outstanding, and that Mr.

Wintner did not have authority to bind SoClean to a settlement and notified Sunset of the

requirement of board approval.

### A.  Material Terms

For an agreement to be enforceable, "[a]ll the essential terms of a contract must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." PSMG Int'l v. Nodine's Smokehouse Inc., 2009 WL 3679288, at *2 (D. Mass. Nov. 3, 2009) (quoting Cygan v. Megathlin, 326 Mass. 732, 733–734, 96 N.E.2d 702 (1951)); see also Targus Grp. Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 431, 922 N.E.2d 841, 850 (2010) ("Ambiguous or indeterminate material terms can render an attempted agreement too uncertain for enforcement."). For example, in Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 37, 878 N.E.2d 952, 959 (2008), the court found that the parties had agreed upon the material terms where an email contained language that it "confirms all the essential business terms of the settlement between our respective clients" and that the parties agreed to "take all reasonable steps to memorialize" those terms. The court found that little remained to be clarified, and that the parties were not in a position to "create" terms. Id.

Sunset contends that all material terms — █████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████ — were agreed upon in the course of email correspondence between Mr. Labbe (counsel for Sunset) and Mr. Wintner (then-counsel for SoClean). Sunset Mem. 6 [Doc. No. 235]. SoClean argues that the communications between the parties show that there were several unagreed upon terms, including ████████████████████████████████████████████ ████████████████████████████████████████████

██████████████████████████████████████ SoClean Mem. 11 [Doc. No. 239]; <u>see</u> Wintner Decl. ¶¶ 12-15 [Doc. No. 239-3].

Here, after a final counterproposal from Sunset on January 21, 2022, and a phone call on February 10, 2022, Mr. Labbe's February 11, 2022 email summarized "a deal to settle the case" on specific terms. Labbe Decl. Ex. A 143 [Doc. No. 236-5]. In response, Mr. Wintner responded "look[s] good to my eye" and mentioned no additional terms that needed to be discussed. <u>Id.</u> at 145.

Throughout the months-long settlement negotiations leading up to this final exchange, neither side brought up other key terms to be negotiated. Instead, they went back and forth on the details that lead up to the bullet points summarized in the February 11, 2022 email. While there may have been further details to discuss, the email appears to set forth all the material terms. <u>See Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver, Colorado,</u> 685 F. Supp. 2d 217, 222 (D. Mass. 2010), aff'd sub nom. <u>Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory,</u> 689 F.3d 29 (1st Cir. 2012) (quoting <u>Buchholz v. Green Bros.,</u> 272 Mass. 49, 52, 172 N.E. 101 (1930)) ("A term is material when it involves 'an essential and inducing feature' of the contract."); <u>see also</u> Black's Law Dictionary (11th ed. 2019) (defining "material term" as a "contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done.").

B.  *Authority to Bind*

Sunset argues that Mr. Wintner had actual authority to bind SoClean to these terms, or alternatively, he had apparent authority from SoClean's executive team, if not by the Board, to bind SoClean. SoClean argues that Mr. Wintner did not have actual or apparent authority, but rather any discussed terms were subject to review and approval by the Board.

8

"[A] settlement agreement entered into by an attorney is ineffective if the attorney did not possess actual authority to bind the client," and "a general retainer, standing alone, does not permit an unauthorized attorney to settle claims on his client's behalf." Malave v. Carney Hosp., 170 F.3d 217, 221 (1st Cir.1999). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Crawford-Brunt v. Kruskall, 2018 WL 379022, at *4 (D. Mass. Jan. 11, 2018) (quoting Restatement (Third) of Agency § 2.01 (2006)).

Where the record does not contain any facts as to the authority given by SoClean to Mr. Wintner as to his authority, the court cannot conclude Mr. Wintner had actual authority to bind SoClean to a settlement agreement.

Nor can the court find that Mr. Wintner had apparent authority. "Apparent authority is that authority resulting 'from conduct by the principal which causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations to his agent.'" Binkley Co. v. Eastern Tank, Inc., 831 F.2d 333, 337 (1st Cir.1987) (quoting Hudson v. Mass. Property Ins. Underwriting Ass'n, 386 Mass. 450, 457, 436 N.E.2d 155 (1982)). As a general matter, apparent authority is established by conduct or representations between the principal and the third party. Restatement (Third) of Agency § 3.03, cmt. b (2006) ("Apparent authority is present only when a third party's belief is traceable to manifestations of the principal."). "The court can decide that an agent had apparent authority to conduct a transaction on the basis of statements, conduct, course of dealing and other manifestations of the principal's consent that would lead a third party of reasonable prudence in the business to rely on the agent's authority." Binkley Co., 831 F.2d at 337. But "[t]he venerable

9

principle that retainer alone does not suffice to vest a lawyer with settlement authority itself placed [the party seeking to enforce a settlement agreement] on notice that [the lawyer's] statements did not suffice, without more, to bind [the client] to a settlement agreement." Malave, 170 F.3d at 221, n.6 (citing Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989). Here, with no manifestations of the principal's consent, Sunset cannot demonstrate apparent authority.

### C.  Condition Precedent of Board Approval

Even if Mr. Wintner did have authority to bind SoClean, the question before the court would still be whether the agreement included a condition precedent of board approval.

"A condition precedent defines an event that must occur before a contract becomes effective or before an obligation to perform arises under the contract. If the condition precedent is not satisfied, the contract and the obligations set forth therein cannot be enforced." Zoll Med. Corp. v. Barracuda Networks, Inc., 585 F. Supp. 3d 128, 136 (D. Mass. 2022) (internal citations omitted). The last offer reflected in the record was Mr. Wintner's offer, which included an explicit requirement of board approval, as set forth in his affidavit [Doc. No. 239-1]. Sunset does not contest that Mr. Wintner stated, during the February 10, 2022 call, that board approval was required.[2] When Mr. Labbe continued to check in after the February 10, 2022 call, Mr. Wintner responded on February 22, 2022, that it was still under review by the SoClean board. Labbe Decl. Ex. A. 152 [Doc. No. 236-5]. Between February 22, 2022, and March 2, 2022, where Mr. Wintner communicated that the SoClean Board of Directors were unwilling to approve the settlement, there were no communications from Mr. Labbe regarding surprise or confusion regarding the requirement of board approval.

---

[2] Sunset also has not requested an evidentiary hearing on the issue.

Because there was no agreement prior to the February 10, 2022 call, and because the condition precedent was communicated during the February 10, 2022, the court finds that Mr. Labbe had knowledge of the condition precedent of SoClean Board approval as part of any deal. As such, the court finds that where the condition precedent of SoClean board approval was communicated and not satisfied, the settlement agreement at issue is not enforceable.

## III.   <u>Conclusion</u>

For the foregoing reasons, Sunset's <u>Motion to Enforcement Settlement Agreement</u> [Doc. No. 234] is DENIED.

IT IS SO ORDERED.

Date: November 29, 2022                                    /s/ Indira Talwani
                                                          United States District Judge